**NORTH AMERICAN VAN LINES, INC., Plaintiff,**

v.

**INTERSTATE COMMERCE COMMISSION et al., Defendants,**

**No. F 74–13.**

United States District Court, N. D. Indiana, Fort Wayne Division.

Dec. 5, 1974.

Donald C. Lewis and Michael L. Harvey, Fort Wayne, Ind., Virgil L. Beeler, Theodore R. Boehm, Michael J. Huston, Indianapolis, Ind., for plaintiff.

John Wilks, U. S. Atty., Fort Wayne, Ind., Theodore Knappen and Fritz R. Kahn, ICC, Washington, D. C., Clyde W. Carver, Atlanta, Ga., Thomas M. Shoaff, Fort Wayne Ind., John R. Sims, Jr., Washington, D. C., Robert E. Joyner, Memphis Tenn., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, Chief Judge.

This is an action by plaintiff North American Van Lines seeking mandamus relief pursuant to Title 28 U.S.C.A. § 1361. The mandate requested would order the defendant Interstate Commerce Commission to perform what plaintiff contends is a clear and plain duty owed it by the Commission; that is, to proceed forthwith and rule on plaintiff's pending applications for motor carrier certificates of public convenience and necessity. Plaintiff claims the Commission is acting in excess of its statutory authority by delaying decision in certain of the application cases and by refusing to issue the certificate in other application cases in which the Commission has entered an order granting the requested operating authority. Plaintiff further contends that the Commission's delay in these application cases is motivated by an improper and illegal factor. It alleges that the delay has as its purpose to economically pressure plaintiff into foregoing its right to legally contest ICC regulations which plaintiff claims are

invalid. Jurisdiction of this cause is claimed by plaintiff to rest upon 28 U.S.C.A. § 1361, 28 U.S.C.A. §§ 1331 and 1337, and Section 10 of the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706.

Defendant Commission and intervening defendants counter that this action must be dismissed because plaintiff has failed to exhaust its available and adequate administrative remedies and because a mandamus order by this court would be inappropriate since its issuance would affect the exercise of discretion. Further, defendants argue, the Commission does have the statutory authority to postpone consideration of new certificate applications and the exercise of this authority by the Commission under the circumstances in this case cannot be found to be arbitrary and capricious or an abuse of discretion.

This cause is now before the court on the following motions:

1. Motion to dismiss the complaint as to applications Sub.-Nos. 179, 190, 191, 192, 193, and 145 filed by intervening defendant Watkins Motor Lines (hereinafter "Watkins") on March 13, 1974.

2. Motion to dismiss the complaint filed by defendant Interstate Commerce Commission, et al. (hereinafter "ICC" or "Commission") on March 27, 1974.

3. Motion to intervene as parties defendant of Byrd Motor Line, et al. (hereinafter "Byrd") filed on April 8, 1974.

4. Motion to dismiss the complaint filed by intervening defendant Byrd on April 8, 1974.

5. Motion for summary judgment, or, in the alternative, for preliminary relief filed by plaintiff North American Van Lines, Inc. (hereinafter "North American") on April 15, 1974.

6. Motion for summary judgment filed by defendant ICC on June 20, 1974.

A hearing on all the above motions was held by this court on July 8, 1974, with all parties represented by counsel. The motion of Bryd to intervene will be granted. For reasons set forth below, the Watkins motion to dismiss will be granted, the ICC motion for summary judgment will be denied, and the remaining motions will be granted in part and denied in part.

I.

## FACTUAL BACKGROUND AND ISSUES

North American operates its business as a common carrier by motor vehicle and engages in the interstate transportation of household goods and in the transportation of specific commodities and new products. The household goods moving business of North American is conducted pursuant to three certificates of public convenience and necessity issued by the ICC. North American's new products business is conducted pursuant to many certificates of public convenience and necessity issued by the ICC, which certificates are limited both as to type of commodity and as to geographic points of origin and destination. Any growth of the new products business requires repeated applications for new operating authority.

As authorized by its statutory mandate, the ICC has classified motor carriers of property into classifications based upon the type of commodities carried by the carrier. North American is classified by the ICC as a "carrier of household goods as a commodity" (Group 2 in the classification) when engaged in the transportation of household goods and as a "carrier of specific commodities not subgrouped" (Group 17 in the classification) when engaged in the transportation of specific commodities or new products.

In 1970, the Commission prescribed new, revised regulations governing the transportation of household goods. These regulations are apparently applicable only to carriers of household goods as a commodity. The new regulations did not contain any standard of performance to measure the adequacy of the carrier's service or compliance with

the regulations. Plaintiff contends that complete, 100% compliance is physically impossible.

During the summer of 1971, an ICC district supervisor conducted an audit of North American's activities as a household goods carrier in order to determine whether North American was complying with the new regulations. Although the supervisor indicated he had discovered violations of the new regulations, no formal investigation proceeding was instituted by the ICC as a result of the 1971 audit.

During the spring of 1972, the ICC supervisor again audited North American's activities as a carrier of household goods. The supervisor informed North American that the ICC was going to institute formal investigation proceedings against several carriers of household goods and that it intended to secure cease and desist orders against such carriers to enjoin them from violating the new household goods regulations. The supervisor later informed North American that he was not aware of any standard of compliance for the new household goods regulations and that it was the ICC's position that complete compliance was required.

The ICC, on September 28, 1972, instituted the threatened proceeding, "North American Van Lines, Inc., Investigation and Revocation of Certificates, No. MC–C–7901." This household goods fitness investigation dealt with issues of North American's compliance with the new household goods regulations and the adequacy of North American's service to the public in the transportation of household goods, including North American's observance of just and reasonable tariffs and regulations. It was later expanded to include issues of whether North American had been and was (1) subjecting certain of its agents and descriptions of traffic to unjust, undue and unreasonable discriminations, prejudice and disadvantage, (2) charging, demanding and collecting less compensation for transportation rendered than

specified in its tariffs, (3) knowingly and willfully offering, granting and giving concessions and discriminations, (4) knowingly and willfully falsifying and altering records required to be made and kept by the ICC, and (5) failing to submit records, memoranda, correspondence and other documents for the inspection of duly authorized examiners of the ICC upon demand and display of proper credentials. Plaintiff claims that the ICC's statements of the matters of fact and law to be asserted by it in the household goods fitness investigation demonstrate that these charges involved issues confined to the household moving business or arose only from activities or methods of operations which occur in the household moving business. It is noted that these charges do not relate to highway safety.

After the audit of North American in the spring of 1972 and before the institution of the household goods investigation proceeding on September 28, 1972, the ICC commenced similar investigations against several other large household goods carriers, including Aero-Mayflower Transit Company and Allied Van Lines, Inc. The investigations against Mayflower and Allied were terminated, however, apparently when those carriers consented to the entry of orders which, in effect, ordered the carriers to cease and desist from violating the household goods regulations. The cease and desist orders entered into by Mayflower and Allied did not contain any lesser standard of compliance than those in the new regulations. Thus, any violation of the household goods regulations by Mayflower or Allied could be alleged to constitute a violation of the cease and desist orders.

Plaintiff reports, and the Commission has not denied, that North American was offered the opportunity to settle its household goods investigation proceeding if it would agree to enter into a consent cease and desist order similar to those accepted by Mayflower and Allied. However, North American refused to enter into such a cease and

desist order. It is North American's contention that the requirement of complete compliance with the regulations is physically impossible. Consequently, North American claims the requirement exceeded the "adequate service" standard for motor carriers prescribed by Congress in the Interstate Commerce Act and therefore was in excess of the Commission's statutory authority to require by regulation.

North American had pending before the ICC several applications for additional certificates of public convenience and necessity for its new products operations when the household goods investigation proceeding was commenced. In six of these certificate application proceedings, applications Sub.-Nos. 137, 139, 140, 142, 146 and 147, the ICC, prior to the institution of the household goods investigation, had after hearing made all findings necessary for the issuance of the certificates of public convenience and necessity requested in the applications, and had entered a written order for the issuance of the certificates upon compliance by North American with the statutory formalities of filing tariff amendments, proof of insurance, and appointment of agents for service of process. Although North American complied with the statutory formalities, Commission personnel did not issue the certificates.

When North American did not receive the certificates ordered to be issued, an attorney in North American's law department called the ICC to inquire. He was informed by a Commission employee that the certificates were being withheld due to the pendency of the household goods investigation proceeding.

On November 22, 1972, another attorney in North American's law department wrote to the Secretary of the ICC for a report as to when the certificates in two of the above-mentioned proceedings would be issued. In response to his letter, plaintiff received a postcard dated November 27, 1972, informing North American that it was the Commission's "practice" to "withhold the release" of any permanent operating authority when an applicant's fitness came under Commission scrutiny.

The ICC has not reopened any of the six aforementioned certificate application proceedings. It has not entered any orders in these proceedings which are subsequent to the orders making all the findings necessary for the issuance of the requested certificates and ordering the issuance of the certificates upon compliance by North American with the statutory formalities.

In another five certificate application proceedings, applications Sub.-Nos. 126, 133, 135, 145 and 152, the ICC, after hearing, made all findings necessary for the issuance of the certificates of public convenience and necessity requested in the applications but, prior to the issuance of the certificates, entered written orders reopening the proceedings for further consideration of North American's fitness to render the service proposed in such applications. It then ordered any further action on the applications deferred pending the household goods investigation proceeding.

In another eleven certificate application proceedings, applications Sub.-Nos. 141,[1] 143, 148, 149, 150, 154, 155, 158, 160, 163, and 178, the ICC, after hearing, entered written orders making find-

1. The verified affidavit of Theodore C. Knappen, accompanying the motion of the Interstate Commerce Commission and the ten named commissioners to dismiss the complaint, lists application Sub.-No. 141 as one of the cases in which there is an outstanding order of the Commission granting the certificate but in which the actual issuance of the certificate has been "deferred" pending the household goods investigation. Plaintiff, however, in its complaint lists this application as one in which a written order of the Commission was entered expressly deferring a fitness determination pending the investigation. As this characterization of the application is less favorable to plaintiff, which had the burden of proof, it will be so treated in this opinion and order.

ings that the operations proposed by each application were required by the public convenience and necessity. But by order the ICC declined to make any findings regarding North American's fitness to conduct such operations and deferred any further consideration of the applications pending the household goods investigation proceeding.

North American has filed twenty-one additional applications for certificates of public convenience and necessity in its new products business. In fourteen of these proceedings, applications Sub.-Nos. 173, 180, 181, 182, 186, 189, 191, 192, 195, 196, 197, 198, 199 and __ (apparently an application to which no number has yet been assigned), the ICC has not yet rendered an initial decision, and therefore no findings have been made with respect to North American's fitness to render the service proposed in such applications or with respect to whether the public convenience and necessity require the service proposed. Three of the applications filed, applications Sub.-Nos. 172, 187, and 193, have been dismissed at the specific request of North American. In application Sub.-No. 162, the Administrative Law Judge rendered his initial decision finding that the proposed operations were required by the public convenience and necessity, but deferring any further consideration of North American's fitness pending determination of the household goods investigation proceeding. Exceptions to the Administrative Law Judge's initial decision have been filed by a protesting carrier. In application Sub.-No. 170, the Administrative Law Judge rendered his initial decision finding that North American had failed to establish its fitness to render the operations proposed in the application. In application Sub.-No. 179, the Administrative Law Judge rendered his initial decision finding both that the operations proposed in the application were required by the public convenience and necessity and that North American was fit to render the proposed operations. Exceptions to the Administrative Law Judge's initial deci-

sion have been filed by a protesting carrier. In application Sub.-No. 190, Review Board No. 3 of the ICC entered an order finding that the operations proposed in the application were not required by the public convenience and necessity. Plaintiff did not file a petition for reconsideration of the order.

The ICC's refusal to issue the certificates or to make findings with respect to North American's fitness to render the service proposed in the various certificate applications is based on the "practice" described in the ICC's answers to North American's preliminary interrogatories:

"When a formal investigation under sections 204(c) and 212(a) is instituted and such investigation involves serious questions concerning the subject carrier's fitness to operate, the Commission's practice has been and remains that it will defer, until completion of the investigation proceeding, determination of the subject carrier's fitness to conduct operations, authority for which is being sought by the carrier in any application proceeding in which the certificate has not yet been issued.

"Notwithstanding the pendency of the proceeding in which the applicant's fitness is in question, any application proceeding in which a certificate is sought by the applicant shall be processed in the ordinary manner in all other respects. However, the Commission's determination concerning the applicant's fitness to receive more operating authority is deferred pending completion of the investigation proceeding. Upon completion of the investigation proceeding, the Commission determines the carrier's fitness to conduct the proposed operations in any pending application proceedings, in light of the evidence adduced in the investigation proceeding which bears on the question of the carrier's fitness."

This "practice" is often referred to in the briefs submitted to this court, and

consequently in this opinion, as the ICC's "fitness flagging" rule.

Plaintiff made many efforts attempting to avoid application of the ICC's "practice" to North American's requests for additional "new products" operating authority. Numerous informal contacts between plaintiff and ICC personnel were not successful. In four of the certificate application proceedings, Sub.-Nos. 155, 158, 160 and 163, North American specifically requested a finding of fitness in the particular proceeding despite the pendency of the household goods investigation. But the ICC still deferred any finding on North American's fitness to render the service proposed in the application although finding that the proposed service was required by the public convenience and necessity.

Plaintiff also claims attempts throughout to settle the household goods fitness investigation proceeding. But the ICC refused North American's offers of settlement and continued to insist the only way the household goods investigation proceeding could be settled was if North American would consent to a cease and desist order requiring complete compliance with the household goods regulations.

The hearing in the household goods fitness investigation began in July, 1973, and the evidentiary record was closed on October 26, 1973. The fitness of North American to perform the services proposed in its pending new products certificate applications apparently was *not* placed in issue in the household goods fitness investigation.

After the record was closed in the household goods investigation proceeding, the ICC continued to refuse to issue any certificates to North American or to make findings on the issue of North American's fitness to render the service proposed in the pending applications. North American continued its informal contacts attempting to resolve the problem concerning its inability to obtain additional authority for its new products business, but these efforts were unsuccessful.

On June 4, 1974, the Administrative Law Judge issued an initial decision in the household goods investigation proceeding. The decision rejected the ICC's contention that 100% compliance with the household goods regulations was required. The Judge also dismissed three of the charges for lack of evidence. He found, however, that the evidence warranted institution of cease and desist orders against North American's activities as listed in three of the charges. The Judge also found violations but ordered a further hearing concerning the charges as to North American's compliance with the household goods regulations and failure to provide adequate household goods services.

Plaintiff claims the practices found to be unlawful by the Administrative Law Judge related *solely* to the household goods operations of North American. Specifically, plaintiff argues the requirement to conduct a visual inspection at the time of making an estimate applies only to household goods carriers and there is no comparable rule for any other type of freight service; that the space allocation rule which was found to be unlawful was employed by North American only with respect to its household goods operations; and that the tariff provision which North American was found to have violated was a provision in its household goods tariff which applies *only* to household goods operations.

Defendant ICC and intervening defendants, however, argue that the factual determinations as to fitness in the household goods investigation are very relevant to a determination of fitness for operation in the new products certificate applications. And, they argue further, the household goods investigation proceeding, involving alleged violations of ICC regulations, is at the least relevant to a determination of plaintiff's ability and willingness to conform to the provisions of the Interstate Commerce Act and the Commission's regulations

promulgated thereunder, which determination is necessary to a finding of fitness in the new products application proceedings.

The initial decision of the Administrative Law Judge had no effect on the withholding of consideration of plaintiff's new products applications. The ICC's present intention evidently is to hold these applications in abeyance until the ultimate conclusion of the household goods fitness investigation.

It is undisputed that no notice of the ICC's "fitness flagging" practice has been published in the Federal Register. Nor was that practice adopted in a rule making proceeding with notice and opportunity for comment afforded those carriers which might be affected by the practice.

Moreover, if the ICC made an individualized determination to apply the "fitness flagging" rule to North American under the circumstances of this case, the determination was made *ex parte* and North American was not given a hearing or any opportunity to be heard with respect to whether the "practice" should be applied, to which certificates it applied, or for how long the suspension should last. With the exception of the specific requests made by North American in four of the pending certificate application proceedings for a finding of fitness despite the pendency of the household goods investigation, there apparently is no evidence in the pending certificate application proceedings concerning the pendency of the household goods fitness investigation, the seriousness of the matters involved in that investigation proceedings, or the import of those matters on the certificate application proceedings. None of the pending certificate application proceedings has been consolidated with the household goods investigation.

At the hearing, this court was informed that the ICC has now instituted a further investigation, "North American Van Lines, Inc.—Investigation and Revocation of Certificates, No. MC–C–8372," to determine whether North American has been or is engaging in the transportation of property by motor carrier in its "new products" business in violation of the ICC Act.

Plaintiff alleges that it has and will continue to incur severe economic injury as a result of the ICC's application of the challenged "fitness flagging" rule. The injury claimed consists of the loss of revenue which would be received for the rendering of the services proposed in the delayed applications. Further injury is alleged to result from loss of business due to the failure of shippers of new products to seek the services of North American for the reason that such shippers are aware that North American was and is unable to obtain any new operating authority.

## II.

## GENERAL STATUTORY AUTHORITY OF ICC TO HOLD APPLICATIONS FOR ADDITIONAL CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY IN ABEYANCE PENDING A FITNESS INVESTIGATION

The Interstate Commerce Commission is given the authority and charged with the responsibility to entertain applications by motor vehicle common carriers for certificates of convenience and necessity and to grant or deny such individual certificates by exercising its discretion within broad statutory standards. 49 U.S.C.A. § 307(a). Additionally, the Commission is authorized to conduct, upon complaint or its own initiative, investigations as to whether a motor carrier has failed to comply with any relevant portion of the Interstate Commerce Act or any requirement established pursuant thereto. 49 U.S.C.A. § 304(b). If the Commission, after notice and hearing, finds a motor carrier failed to comply with such provision or requirement, the Commission is authorized and required to issue "an appropriate order to compel the carrier . . . to comply therewith." *Id.* It

is under this statutory authorization, suplemented by 49 U.S.C.A. § 312(a), that the Commission is conducting its household goods "fitness" investigation proceeding of plaintiff North American.

Plaintiff argues that the two statutory powers of the Commission, to hear and decide individual certificate applications on the one hand, and to conduct fitness investigations on the other, are separate and distinct, and that the Commission exceeds its statutory authority by attempting to link the two. Specifically, plaintiff cites 49 U.S.C.A. § 307(a) which provides: .

> . . . a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied

Plaintiff argues that the conclusion drawn from this statutory provision is that the Commission must either grant or deny any application for a certificate, and that it has no statutory authority to hold an application in abeyance pending a fitness investigation of the carrier. Consequently, plaintiff argues the Commission owes it the clear and plain duty to decide the pending certificate applications immediately and to either grant the certificate or deny the application in each individual case. Plaintiff points out that even if its application requests were denied, it would at least then be able to obtain the normal statutory judicial review of such Commission orders, rather than have the applications held in a limbo of indeterminate length without any order in any form.

■ But this argument as to the Commission's authority paints with too broad a brush. It is true that the statute does not explicitly link the certificate application determination to Commission investigation proceedings. But it would be an unreasonable interpretation of the statutory scheme and the Commission's power to hold that the Commission is required to, as the Commission in its post-hearing memorandum puts it, "don blinders" in its consideration of applications for new certificates and ignore current proceedings, possibly involving factors very relevant to such certificate applications, in related administrative cases. A part of the Commission's task in a new certificate application is to ascertain whether the applying carrier is "fit, willing, and able to properly perform the service proposed and to conform to the [statutory] provisions . . . and the requirements, rules and regulations of the Commission thereunder." It is not reasonable to maintain that in evaluating this factor the Commission must ignore a current fitness investigation inquiring into the carrier's alleged misconduct in its already authorized operations.

■ However, the ICC's statutory power is one of *discretion*; it may, by an exercise of that discretion, *determine* that it is in the public interest for a given application for new authority to be held in abeyance pending part or all of a current fitness investigation. Nevertheless, this court cannot hold that the statute delegates to the ICC the power to institute a rule withholding *all* certificate applications any time and every time there is a carrier investigation pending, regardless of facts concerning the individual application and the nature of the complaint at issue in the investigation. There would be involved in a given instance questions as to the seriousness of the accusations leading to the investigation and as to the degree of factual relevance between such accusations and a given certificate application. There would also be questions concerning the

expected length of delay if the application is held in abeyance and the degree and immediacy of the public's need for the service proposed in the application. It is not a reasonable construction of the statutory framework which governs the Commission's operations, or the Congressional policy underlying that framework, to maintain that regardless of the substantialness or nature of such issues, the Commission can whenever it wishes and for no other reason impose such a delay.[2]

█ This reasoning is not weakened by the ICC's argument that "by deferring fitness determination in application proceedings pending the outcome of an investigation and revocation case, the Commission avoids costly and unnecessary relitigation of issues." This contention loses its broad appeal, as opposed to possible applicability in individual cases, once it is seen that "fitness" in respect to new certificate applications is a case-by-case determination (so long as there is no consolidation of cases), and must ultimately be individually litigated in each application proceeding. This is clear from the ICC's own explanation of the "practice." And, it is important to note the results of the fitness investigation, even if there were a substantial factual link between it and the pending application proceedings, *could only be* evidence and not conclusive in the subsequent application proceedings. The illegality of past operations does not bar a carrier from seeking and obtaining additional certificates for operating authority. St. Johnbury Trucking Co. v. United States, 326 F.Supp. 938, 942 (D.Vt. 1971); AAA Con Auto Transport Inc. v. United States, 317 F.Supp. 1314, 1316 (S.D.N.Y.1970).

## III.

## NATURE AND SCOPE OF THIS JUDICIAL REVIEW

█ In the present action, which involves a general fitness investigation into alleged economic violations respecting a carriage classification different than that pertaining to the applications for new operating authority, the nature and degree of the factual relationship between the two types of "fitness" determinations is not clear. However, despite the attempts of the parties to try this factual issue, it is most emphatically not the province of this court, in judicially reviewing agency action pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706, to determine as a matter of first impression in the context of the Commission's authority and under the specific facts of this case whether plaintiff's new applications should be held in abeyance pending the fitness investigation. As is obvious from the arguments of the parties, there are several complex factual issues involved concerning the significance of any link between the pending fitness investigation and the determinations which the Commission must make in passing upon plaintiff's applications for new operating authority in a different classification. How significant, in the context of the regulatory scheme and the effects upon the public, are the economic violations charged in the complaint initiating the Commission's fitness investigation of plaintiff? How much relationship as a matter of fact is there between the "household goods" operating authority and plaintiff's alleged economic violations while operating thereunder on the one

---

2. The Commission itself seems to recognize its duties in this regard in some of its arguments presented to this court. E.g.
 For almost forty years the Commission has been making determinations on the fitness of carriers, and in the process has developed considerable expertise as to when it is appropriate to find a carrier fit. When a formal investigation is instituted against a carrier, *the Commission must apply its*

*expertise in determining whether the issues involved in the formal investigation are sufficiently serious* to require the Commission not to make any more fitness findings in the carrier's application proceedings until the issues under investigation have been resolved.
Brief in Support of Motion to Dismiss [of the ICC] at 14 (emphasis added).

hand, and plaintiff's requests for "new products" operating authority and expected future performance thereunder on the other? How critical is the public's immediate need for the requested new authority, and what is the expected delay if consideration of the requested new authority is postponed pending the fitness investigation? If postponement of consideration of requests for new authority is decided to be otherwise appropriate, how long should that postponement last? In the present action, the period of delay would have been 13 months had it extended only until the evidentiary record in the fitness investigation was closed. But the delay has now lasted for more than two years and substantial additional delay is expected if it extends until a final outcome in that investigation.

These are clearly decisions for which responsibility must lie with the ICC. They are paradigm examples of the types of factual and mixed law-fact questions which are entrusted to the expertise of the administrative agency by the scheme of governance embodied in the Administrative Procedure Act and in this case the Interstate Commerce Act.

■■ However, the restricted role of this court concerning such questions notwithstanding, plaintiff North American is entitled to seek the limited judicial review of this administrative action made available by the relevant portions of Section 10 of the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706. The Commission defends its assertion of its power to link new certificate application decisions to the investigatory power and to impose the consequent delay as being "procedural" and within the "broad inherent authority" which the Supreme Court has recognized agencies have to develop their own procedures. But the "procedural" label cannot be used to shield agency action which is otherwise properly amenable to judicial review. "The term 'agency action' brings together previously defined terms in order to simplify the language of the judicial re-

view provisions of [the Administrative Procedure Act] and to assure the complete coverage of every form of agency power, proceeding, action, or inaction." Samuel B. Franklin & Company v. SEC, 290 F.2d 719 (9th Cir. 1961) (citing the legislative history of the Administrative Procedure Act). Accordingly, procedural or not, the agency action in this unusual case will be reviewed according to the standard principles governing limited judicial review.

## IV.

### THE LEGALITY OF THE CHALLENGED ICC ACTION

What it is precisely that the Commission has done in this case is not clear from the record before this court. Defendant and defendant intervenors sometimes argue that the Commission has instituted a flat, "across-the-board" rule (and simply applied it in the ordinary course to this particular plaintiff). As noted, to hold in abeyance applications for new operating authority is a *conclusion* which the Commission may permissibly draw, but it may do so *only after an exercise of the discretion* which it is empowered, and required, by statute to apply to the specific case.

Alternatively, defendant and defendant intervenors sometimes argue that the Commission *has* exercised its discretion, and in determining that North American's applications for new certificates should be held in abeyance pending the fitness investigation, has reached a conclusion which this court cannot upon review of the evidence invalidate as arbitrary and capricious or an abuse of discretion. But such argument misperceives the nature of this particular judicial review. This court in a mandamus action is not sitting in review of the normal decision-making processes of the Commission and evaluating factual and mixed law-fact determinations made therein by the "abuse of discretion" or any other standard. Rather, in the limited review proper for the present action the court is reviewing Commission action for errors of law only. And if in

fact the Commission did exercise its discretion in deciding to apply the "fitness flagging" practice in this instance, then it did commit an error of law by making that determination in an *ex parte* fashion, without notice or opportunity for hearing on the part of North American. This is a violation of the relevant portions of the Administrative Procedure Act.

■ By the terms of that Act, adjudications otherwise required by statute to be decided on the record after opportunity for an agency hearing must comply with the notice, hearing, and record requirements of the Act, 5 U.S.C.A §§ 554, 556–557. It has long been held that an application of a motor carrier for a certificate of public convenience is such an adjudication and therefore covered by those requirements. Riss and Company v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951); United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952); Pinkett v. United States, 105 F.Supp. 67 (D.Md.1952). And it cannot be maintained that the procedural requirements do not apply because the decision to hold plaintiff's applications in abeyance is not a "final disposition" of those matters as the term is used in the definitional section of the Administrative Procedure Act, 5 U.S.C.A. § 551(6). Rather, regardless of the merits of this argument, Section 9 of the Act, 5 U.S.C.A. § 558, provides an independent requirement that the hearing and record provisions be adhered to, even though the decision may be to postpone decision pending a future event:

> When application is made for a license required by law, the agency, . . . within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title [5 U.S.C.A. §§ 556–57] . . . and shall make its decision.

■ The ICC has discretion to determine that decision on certain certificate applications should be delayed during the pendency of part or all of a fitness investigation proceeding. But that discretion cannot be exercised by the Commission in an *ex parte* manner, heedless of the procedural protections which Congress has determined to provide. Not the least important of the policies underlying those procedural safeguards is that of providing for an administrative record in order to facilitate, and yet hold within proper limits, subsequent judicial review. Before the court in the present action:

> There are no findings and no analysis here to justify the choice made, no indication of the basis on which the Commission exercised its expert discretion. . . . The Commission must exercise its discretion . . . within the bounds expressed by the standard of 'public convenience and necessity.' . . . And for the courts to determine whether the agency *has* done so, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it'.

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) (citations omitted).

The present state of the record in this action illustrates the wisdom of the Congressional provision for the required procedures. If those procedural safeguards were unnecessary for the type of Commission action or inaction at issue in this case, then a reviewing court would be forced to either declare the exercise of discretion unreviewable pursuant to 5 U.S.C.A. § 701(a)(2) because "committed to agency discretion" or to in effect, due to the lack of any reviewable administrative record, try the factual issues as ones of first impression at the reviewing stage.

■ This court cannot hold this particular exercise of discretion to be unreviewable by the "committed to agency discretion" exception to judicial review. This exception has been authoritatively construed to be "a very narrow exception" and applicable only "in those rare instances where 'statutes are drawn in

such broad terms that in a given case there is no law to apply'." Citizens to Preserve Overton Park v. Volpe, 401 U. S. 402, 91 S.Ct. 814, 820–821, 28 L.Ed.2d 136 (1971).

In passing upon the "delay" decision, as in the certification determination process generally, the Commission is required by statute to exercise its discretion in accordance with the standard of "public convenience and necessity." It is clear that this standard yields "law" for a reviewing court "to apply." *See, e. g.,* Burlington Truck Lines, Inc. v. United States, *supra*. Furthermore, plaintiff here alleges that the ICC has linked an indeterminate delay of consideration of all applications for new grants of operating authority to the Commission's investigatory power, with the motive of economically coercing North American into accepting a decree consenting to Commission action which North American has a legal right to contest. *Overton Park* holds the exception to judicial review to be a very narrow exception at least partially because it is in situations of uncontrolled and unreviewable administrative power that such abuses can arise. It is clear that an attempt by the Commission to utilize its powers in the manner alleged would be shocking and an illegal use of its statutory mandate. The Commission is to use its power over the certification process to further the interests of the public convenience and necessity, and not as a penal sanction. Burlington Truck Lines, Inc. v. ICC, 194 F.Supp. 31 (S.D.Ill.1961), rev'd on other grounds, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). And regardless of how pure the Commission's intentions may actually be in this or any other case, there is a strong public interest expressed by the Administrative Procedure Act in avoiding even the appearance of possible abusive uses of administrative power.

Alternatively, regardless of the wishes and arguments of the parties, this court cannot and ought not to try the "postponement" issues under the specific facts of this case as ones of first impression. Such a course would clearly thrust this court into a role of making determinations which Congress has entrusted to the ICC and its expertise. Only through judicial insistence on administrative adherence to procedural safeguards including the development of a reviewable administrative record can the intended Congressional scheme for allocating competences between agency and reviewing court be maintained.

## V.

### THIS COURT'S JURISDICTION

Plaintiff seeks a mandamus remedy from this court claiming jurisdiction pursuant to 28 U.S.C.A. § 1361. However, in considering this court's jurisdiction to grant the plaintiff a remedy in the nature of a mandamus order, it is necessary to distinguish between those certificate applications for which the only outstanding ICC order is one granting the certificates on the one hand, and those for which there is a written ICC "order" decreeing the delay on the other. Consideration of mandamus relief for certificate applications of the former variety is discussed below. But as to the latter type, whether the ICC "order" is one "reopening" the certificate application proceeding or one deferring in the first instance consideration of the fitness issue, this court concludes it does not have authority to issue the requested mandatory order.

Title 28 U.S.C.A. § 1336 provides that district courts have jurisdiction of actions "to enforce, enjoin, set aside, annul or suspend . . . any order" of the ICC. And when section 1336 jurisdiction exists, it is usually governed by the provisions of 28 U.S.C.A. §§ 2321–2325. *See, e. g.,* United States v. ICC, 337 U.S. 426, 69 S.Ct. 1410, 1428–1429, 93 L.Ed. 1451 (1949) (Justice Frankfurter dissenting). Section 2325 of Title 28 requires that any injunction "restraining the enforcement, operation or execution . . . of any order" of the ICC shall be granted only by a three-judge court.

Plaintiff argues that Section 1336 jurisdiction is not available in the present action and therefore that the rules governing its exercise do not apply. Plaintiff insists the case law interpretation is that only "final" Commission orders, and not "interlocutory" or "procedural" orders are reviewable pursuant to Section 1336. *E. g.*, Michigan Public Service Commission v. United States, 162 F.Supp. 670, 673–675 (W.D.Mich. 1958); M. P. & St. L. Express, Inc. v. United States, 165 F.Supp. 677, 680–681 (W.D.Ky.1958); Long Island R. R. v. United States, 193 F.Supp. 795, 798–800 (E.D.N.Y.1961). But although this is the formal language of opinions discussing the coverage of Section 1336 jurisdiction, a close examination reveals it is meant that only "final" orders are reviewable in the sense of "finality" generally; that is, sufficiently final to be appropriate for judicial review. "Interlocutory" or "procedural" in these opinions means that the order is not sufficiently ripe for judicial review and that the complaining party should await the orderly outcome of the administrative process. If a Commission "order" delaying decision in a new application case is not "final" in this sense, North American clearly cannot seek jurisdiction for review via an alternative route. If it is "final" in this regard, then the opinions do not hold that Section 1336 jurisdiction is inappropriate even though the order is in some sense "interlocutory." See especially the opinion in Long Island R. R. v. United States, *supra,* as recognizing this conclusion.

Therefore, in those application cases where an ICC order has been entered deferring application consideration pending the household goods fitness investigation, jurisdiction to entertain the present action must rest upon 28 U.S.C.A. § 1336 because the action is clearly one to "enjoin, set aside, an-nul or suspend" a Commission order. And this court has concluded, after a lengthy exploration into uncharted waters, that the requested mandamus order cannot issue from a single judge district court when jurisdiction to review ICC action is pursuant to Section 1336.

The mandate requested would in effect restrain the operation of a Commission order—the order delaying decision on the new certificate request. And that order is one properly reviewable under the statutory plan laid out by 28 U.S.C.A. §§ 1336 and 2321–2325. There is no practical relief which plaintiff would obtain by mandamus which is not available to it through an injunction issued pursuant to 28 U.S.C.A. § 2325. Accordingly, plaintiff should not be able to bypass the three-judge procedure for which Congress has provided by labeling its requested relief as mandamus, at least not where injunctive relief available through that statutory procedure would serve its needs equally well.[3]

This conclusion is reinforced by the legislative history of the mandamus jurisdictional statute, 28 U.S.C.A. § 1361, which alone might allow this district court to grant such a remedy in the present cause. In discussing the need for giving federal district courts mandamus jurisdiction, the Senate Report indicates it was in the *absence or inadequacy* of normal statutory review proceedings that district court authority to grant a mandamus remedy was required. S.Rep. No. 1992, 2 U.S.Code Cong. & Admin.News, pp. 2784, 2785, 87th Cong., 2d Sess. (1962). Consequently, where adequate relief is obtainable in review proceedings provided by statute, this court should not supersede the three-judge court requirement by using its mandamus jurisdiction in a cause for which that jurisdiction was arguably not intended. Accordingly,

3. There is no allegation and no showing that, should the Commission's delay orders be overturned upon proper statutory judicial review, the Commission would still be unwilling to proceed in a proper fashion with plaintiff's certificate applications. Only in the instance of such clearly unjustified refusal could a mandamus order properly issue from a single judge district court.

as to those application proceedings for which there is a Commission order postponing a fitness determination this action must be dismissed.[4]

■ However, in those application proceedings in which the only outstanding Commission order is one granting North American's requested certificate, a mandamus remedy if otherwise appropriate can issue from this court. In these cases, jurisdiction is pursuant to the Administrative Procedure Act and the mandamus statute, 28 U.S.C.A. § 1361. And it is not necessary to this court's jurisdiction in regard to these applications to decide the knotty questions as to whether an independent grant of jurisdiction is conferred by the mandamus statute, see Cortright v. Resor, 447 F.2d 245, 250 (2d Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972), or by the Administrative Procedure Act and specifically 5 U.S.C.A. § 702, see Aguayo v. Richardson, 473 F.2d 1090, 1101–1102 (2d Cir. 1973), cert. denied, 410 U.S. 921, 93 S.Ct. 1350, 35 L.Ed.2d 583 (1973). As there is more than ten thousand dollars in controversy (the complaint alleging a loss of more than $15,000 in revenue per day), jurisdiction is independently conferred by 28 U.S.C.A. § 1331.

Section 10(b) of the Administrative Procedure Act, 5 U.S.C.A. § 703, provides that:

The form of proceeding for judicial review is the special statutory review proceeding . . . specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.

There is no "special statutory review proceeding" for plaintiff to utilize when the remedy required is to compel the Commission to obey its *own* outstanding orders. In the language of the standard ICC review statute, 28 U.S.C.A. § 1336, plaintiff's action is not one seeking to "enforce, enjoin, set aside, annul or suspend" a Commission order. Rather, it is a classic mandamus action, seeking to compel Commission action illegally withheld. Therefore, review and the possible grant of a mandamus remedy by this court is appropriate pursuant to the mandamus statute and the Section 10(b) provision for review by "any applicable form of legal action." *Cf.*, Deering Milliken, Inc. v. Johnston, 295 F.2d 856, 860–866 (4th Cir. 1961).

## VI.

## PROPRIETY OF MANDAMUS RELIEF

■ Mandamus is of course a powerful and unusual remedy and issues from a federal district court only under limited and proper circumstances.

4. The reasoning above has been that a single judge district court can have no jurisdiction to grant a mandamus which in effect sets aside an ICC order *because* the normal statutory review by a three-judge court is available to consider the type of ICC order here involved. But by the express terms of 49 U.S.C.A. § 17(9), that normal statutory review can be invoked *only* after a petition for rehearing has been filed and considered by the appropriate Commission body. The plaintiff in this action admits that no such § 17(9) petition was filed with the Commission, and it is therefore obvious that this action, as to those applications presently being considered, must be dismissed for failure of plaintiff to exhaust administrative remedies. This court need not request a convening of a three-judge panel and can instead properly dismiss when it is clear that the claim must be dismissed for want of jurisdiction. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) ; *cf.* Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). "Jurisdiction" in this sense means that the asserted claim is clearly insufficient. A district judge is empowered to pass upon this initial question of jurisdiction when defects fatal to the asserted claim appear on the face of the pleadings. *Poresky, supra.* This action is unusual in that plaintiff admits failure to comply with the statutory requirement. It does so of course because it claims this court has jurisdiction to review via an alternative statutory route which is without the requirement.

## A. *Clear Duty to Act*

One criteria which must be met before a mandamus order is appropriate is that there must be a clear duty on the part of the agency to do the act sought. There is a statutory duty of the ICC to hear and decide certificate applications, 49 U.S.C.A. § 307, 5 U.S.C.A. § 558(c), and to do so with reasonable promptness, 5 U.S.C.A. §§ 555(b), 558(c). A failure to do so can be corrected by a mandamus order. 5 U.S.C.A. §§ 551(13), 702–703, 706; United States ex rel. Chicago Great Western R. R. v. ICC, 294 U.S. 50, 55 S.Ct. 326, 330, 79 L.Ed. 752 (1935); *cf.* Templeton v. Dixie Color Printing Co., 444 F.2d 1064, 1070 & n. 3 (5th Cir. 1971); Jewel Companies, Inc. v. FTC, 432 F.2d 1155, 1159 & n. 1 (7th Cir. 1970). And although the Commission has authority to decide in its discretion to hold certain applications in abeyance, it has a duty under the Interstate Commerce Act and the Administrative Procedure Act to exercise that discretion within the proper procedural framework. Therefore, a mandamus order may properly compel the Commission to carry out one of two of these alternative duties; either to pursue and conclude each individual certificate application or to decide to delay pending the conclusion of part or all of the fitness investigation within the procedural framework required by the Administrative Procedure Act.[5]

## B. *Effect on Exercise of Discretion*

Closely related to the clear duty to act requirement as a prerequisite to mandamus relief is the rule that mandamus should not be used to control the exercise of discretion or influence the substance of a discretionary decision. Indiana & Michigan Electric Company v. FPC, 224 F.Supp. 166, 169–170 (N.D. Ind.1963). No control over the substance of a discretionary decision would be effected by the issuance of a mandamus order in this case. The Commission may have, as detailed above, exceeded its statutory authority by applying an across-the-board "fitness flagging" rule and consequently have in effect *unlawfully refused* to exercise its discretion. Alternatively, the Commission may have exercised its discretion but have done so in an *ex parte* manner, without observing procedures required by law. In either case, a mandamus order by this court, compelling the Commission to proceed with the new certificate applications or to determine the delay question by exercising its discretion within legally prescribed procedures, in no way influences the substance of discretionary judgment.

Nor is there a problem because there are here involved applications for which the only outstanding ICC order is one granting the certificate. The Commission has continuing jurisdiction over its own orders and may reopen them on its own motion for reconsideration at any time prior to the actual issuance of the certificates. Resort Bus Lines, Inc. v. ICC, 264 F. Supp. 742, 745 (S.D.N.Y.1967); Chicago and North Western Ry. v. United States, 311 F.Supp. 860, 863–864 (E.D. Ill.1970). The mandamus order does not force the actual issuance of any specific certificate granting additional operating authority. The Commission is free to reopen the proceedings in the certificate application cases which have not to this point been reopened but rather in which the issuance of the certificate has simply been "delayed" or "deferred." The Commission could then make the determination whether and to what ex-

---

5. This court's order compelling the Commission to perform its duty in one of these two alternative ways is appropriate pursuant to judicial review under the Administrative Procedure Act. 5 U.S.C.A. § 706 provides: .
 "The reviewing court shall—
 (1) compel agency action unlawfully withheld or unreasonably delayed; and

 (2) hold unlawful and set aside agency action . . . found to be—

 (C) in excess of statutory . . . authority;
 (D) without observance of procedure required by law; . . . ."

tent, if at all, the applications and the fitness investigation should be linked. What the Commission is not free to do as a result of the mandamus order is to informally delay the application proceedings and certificate issuance as a result of an *ex parte* determination which violates the Administrative Procedure Act and which does not result in a Commission order judicially reviewable in the ordinary course.[6]

## C. *Exhaustion of Administrative Remedies*

The final criteria which the plaintiff seeking a mandamus remedy in this case must meet is that concerning what is usually termed the "exhaustion of administrative remedies." The exhaustion requirement affects of course the propriety of judicial review of administrative action generally, *see e. g.,* 3 K. Davis, Administrative Law Treatise §§ 20.01–20.10 (1958), as well as the propriety of mandamus relief in particular, *see, e. g.,* Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 218, 70 L.Ed. 494 (1926); Hammond v. Hull, 76 U.S.App.D.C. 301, 131 F.2d 23, 25 (1942).

The present action is unusual, however, because defendant Commission is not making the "exhaustion of administrative remedies" argument in the usual sense that plaintiff should await the final administrative outcome in the certificate application cases before obtaining judicial review. This, of course, would not be a proper argument when administrative delay is itself claimed to be the source of the injury alleged. Deering Millikin, Inc. v. Johnston, *supra.* As the Commission concedes in its posthearing brief, an interlocutory decision to delay must be appealable without

awaiting the ultimate Commission decision if the aggrieved party is to realistically have an adequate remedy. *See* L. Jaffe, Judicial Control of Administrative Action 426–32 (1965).

 Further, as the Commission implicitly recognizes a decision by the ICC to delay consideration of plaintiff's applications is an agency action characterized by sufficient finality so that judicial review is appropriate. Considering the posture of the issues for judicial review and the hardship to the plaintiff of withholding judicial review at this juncture, the court concludes that such delay is sufficiently final under the "ripeness" principles announced in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967). *See also,* Pennsylvania R. R. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 640, 95 L.Ed. 817 (1950) Justice Frankfurter concurring.

Instead, the ICC's exhaustion contention is that plaintiff could and should have first, before resorting to judicial review, utilized internal Commission procedures which, the Commission argues, were *immediately available* (and therefore an "adequate remedy") to appeal such an interlocutory decision. The ICC maintains that plaintiff had an immediately available remedy in the form of Rule 102 of the Commission's General Rules of Practice, 49 C.F.R. § 1100.102. This rule provides:

*Petitions not otherwise covered. (Rule 102)*

When the subject matter of any desired relief is not specifically covered by the rules in this part, a petition

---

**6.** It is largely within the discretion of the Commission to develop the parameters of a particular proceeding and the order resulting therefrom. The Commission could of course make the factual determinations and draw the legal conclusions in the context of each of the individual application proceedings. It may be, however, that the Commission will conclude that the "postponement" issues are

amenable to treatment by decisions which deal with broad factual categories concerning type of carriage classification, type of fitness complaint under investigation and so on. This determination as to procedural design is entrusted to the good judgment of the Commission, subject of course to the constraints of the Administrative Procedure Act.

seeking such relief, which relief shall be construed as including appropriate discovery procedures, and stating the reasons therefor may be filed and served.

However, as to the failure of plaintiff to exhaust this remedy allegedly immediately available, it must be noted that, in those instances where the certificate issuance was withheld but the only Commission outstanding order granted the requested operating authority, it is not obvious on the face of Rule 102 that it has any application here. There is no indication that the intended use, or one of the intended uses, of Rule 102 is to request the Commission to do what its only outstanding written order already says it will do. Nor has any case or regulation been cited to this court in which it is indicated that Rule 102 is to be so used. Additionally, Rule 102 is arguably no more of a remedy than exists with any applicant any time with any administrative agency. Of course, a petition may be filed. But there is no assurance in the rule that such a petition will in fact be considered by the Commission.

Further and more importantly, even if a Rule 102 petition were to be considered by the ICC, if the petition evoked only a reconsideration of the decision by the same agency authority, such a decision is not required as a prerequisite to judicial review by the express terms of 5 U.S. C.A. § 704. And there is no assurance in the Rule that such a petition would be heard and considered by a *superior* agency authority. In Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945), prior to the passage of the Administrative Procedure Act, the Supreme Court determined that administrative finality was sufficient for purposes of judicial review in the presence of a lack of assurance that the remedy claimed to have not been exhausted would in fact have been available.

Finally, regarding Rule 102, it is not clear to this court that *any* administrative appeal procedure is appropriate when the only outstanding agency order is one granting what the plaintiff has already requested. In a very real sense, there is nothing the plaintiff wishes to appeal or have reconsidered.

Another consideration in judging whether the exhaustion doctrine bars this judicial review is that a major exception to the exhaustion requirement is often found when the question of substance presented to the court is one of law—one involving statutory interpretation construing the limits of the agency's authority and not reviewing the exercise of the agency's discretion or expertise. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969); Borden, Inc. v. FTC, 495 F. 2d 785, 787 (7th Cir. 1974). Certainly, the questions decided by the court in this limited judicial review have been purely legal ones. Additionally, closely related to this "question of law" exception to the exhaustion requirement is a similar exception where the agency action is clearly in violation of procedural safeguards.

> We are not aware of any principle of law which requires that a party request an administrative agency to reconsider or review an action of the administrative agency which is issued in violation of the agency's rules, the Administrative Procedures Act and without any semblance of a notice or hearing.

A. E. Staley Manufacturing Co. v. United States, 310 F.Supp. 485, 489 (D.Minn. 1970).[7]

Accordingly, it is appropriate for this court to find that, as to those application proceedings in which there is an outstanding Commission order granting the requested certificate, the exhaustion requirement is not a bar to this judicial review and judgment on the merits.

---

7. The *Staley* opinion further indicates that in such situations informal inquiries of the type North American made concerning the Commission's action may be considered in judging whether the exhaustion requirement has been sufficiently fulfilled. 310 F.Supp. 488.

## VII.

## DISPOSITION OF THOSE APPLICATION PROCEEDINGS IN WHICH THE COMMISSION HAS NOT YET ENTERED AN INITIAL ORDER

 . Certain of the new certificate application proceedings involved in this case are currently still underway. No initial decision or order—not even one deferring the fitness issue for later consideration—has been entered in these proceedings. Nor is there an allegation or showing by plaintiff that the Commission is unreasonably delaying entering any order at all in these proceedings. Rather, the claim is that when such order is entered, it will, if all other issues have been decided in plaintiff's favor, improperly defer consideration of the fitness issue pending the household goods investigation proceeding. As discussed above, such orders would be, given utilization of the appropriate and available administrative remedies, sufficiently final for purposes of judicial review pursuant to 28 U.S.C.A. § 1336. Consequently, the present action as to these application proceedings must be dismissed because these applications are not now sufficiently final for judicial review and plaintiff has not yet exhausted its administrative remedies with respect to such applications.

## ORDER

Accordingly, it is the order of this court that:

1. The motion of Byrd, et al. to intervene as intervening defendants is granted as a permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

2. As to those application proceedings in which the ICC has not yet rendered an initial opinion, applications Sub.-Nos. 173, 180, 181, 182, 186, 189, 191, 192, 195, 196, 197, 198, 199, and ___, the motions to dismiss of defendant ICC and intervening defendant Byrd are granted. The motion to dismiss as to applications Sub.-Nos. 191 and 192 of intervening defendant Watkins is granted, and the motions for summary judgment of plaintiff North American and defendant ICC are denied.

3. As to those applications which have been dismissed at the administrative level at North American's request, applications Sub.-Nos. 172, 187, and 193, the motions to dismiss of defendant ICC and intervening defendant Byrd are granted, and the motion to dismiss as to application Sub.-No. 193 of intervening defendant Watkins is granted.

4. As to those applications in which an initial administrative opinion has been rendered but which are still at some stage of consideration at the administrative level, applications Sub.-Nos. 162 and 179, the motions to dismiss of defendant ICC and intervening defendant Byrd are granted. The motion to dismiss as to application Sub.-No. 179 of intervening defendant Watkins is granted, and the motions for summary judgment of plaintiff and defendant ICC are denied.

5. As to that application in which the initial decision of the Commission found that plaintiff had failed to establish its fitness, application Sub.-No. 170, and that application in which the initial decision of the Commission found that the proposed operations were not required by the public convenience and necessity, application Sub.-No. 190, the motions to dismiss of defendant ICC and intervening defendant Byrd are granted. The motion to dismiss as to application Sub.-No. 190 of intervening defendant Watkins is granted, and the motions for summary judgment of plaintiff and defendant ICC are denied.

6. As to the application proceedings that were reopened and consideration deferred by Commission order as to the fitness issue, applications Sub.-Nos. 126, 133, 135, 145, and 152, and as to the application proceedings in which, by Commission order, fitness findings were deferred pending the outcome of the household goods fitness investigation, applications Sub.-Nos. 141, 143, 148, 149, 150, 154, 155, 158, 160, 163, and 178,

motions to dismiss of defendant ICC and intervening defendant Byrd are granted, the motion to dismiss application Sub.-No. 145 of intervening defendant Watkins is granted, and the motions for summary judgment of plaintiff and defendant ICC are denied.

7. As to those application proceedings in which the only outstanding Commission order is one granting the requested certificate for new operating authority, applications Sub.-Nos. 137, 139, 140, 142, 146, and 147, plaintiff's motion for summary judgment is granted and the Interstate Commerce Commission is mandated and ordered to proceed with the certification process in accordance with the above opinion. The motions to dismiss of defendant ICC and intervening defendant Byrd are denied, and the motion for summary judgment of defendant ICC is denied.