IN RE APPLICATION OF PAUL CHRISTENSEN. PAUL CHRISTENSEN, APPELLANT, v. HIGHWAY MOTOR FREIGHT, INC., ET AL., APPELLEES.
64 N. W. 2d 99

Filed April 30, 1954. No. 33494.

R. E. *Powell* and *J. Max Harding*, for appellant.

D. A. *Russell* and *Shelburn & Russell*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Appellant, Paul Christensen, an intrastate motor freight carrier, doing business as Christensen Truck Line at Beaver City, filed application No. M-8232, Supplement No. 2, with the Nebraska State Railway Commission, hereinafter called the commission, seeking to acquire the irregular operating authority heretofore issued to Severn A. Johnson of Oxford in application No. M-8350, and consolidate same in one certificate of convenience and necessity with his own more limited irregular route authority. Appellant had previously operated Johnson's rights for some time under lease from him with commission approval, which authorized irregular route transportation of commodities generally, except groceries and liquors, between points within a 20-mile radius of Edison and from points within said radial area on the one hand, and on the other hand to and from points within the state at large. As part of the same application appellant also sought an extension of authority to transport by regular route commodities generally, except those requiring special equipment, between Omaha, Lincoln, and Hastings, on the one hand, and Oxford, Beaver City, Edison, and Arapahoe, with the off-route point of Bertrand, on the other hand, together with irregular route authority between points and places

within a 25-mile radius of Edison, and between points and places within said radial area on the one hand, and on the other hand, points and places in Nebraska over irregular routes.

No formal objections to the application were filed, but Highway Motor Freight, Inc., Ideal Truck Lines, and Coffey's Transfer Co., appellees herein who were motor carriers serving the same area, appeared at the hearing as interveners in opposition to the proposed extension from irregular to regular route authority and the proposed extension of radial service from 20 to 25 miles from Edison. Appellees did not oppose the transfer of Johnson's irregular route authority under application No. M-8350, and no evidence was adduced by appellant in support of his proposed extension of radial service from Edison.

After an extended hearing before a commission examiner, he filed a consolidated report which recommended: (1) Granting that part of appellant's application seeking to acquire Johnson's irregular route authority with appropriate concellations, and issuance of a new consolidated certificate; and (2) that appellant's extension application should be granted in part. Thereafter appellees filed exceptions to only part 2 aforesaid of the examiner's report, and after hearing thereon before the commission, the exceptions were sustained and that part of appellant's application for an extension granting regular route authority was denied upon the ground, as shown by the record, that "the present and future public convenience and necessity does not require the regular-route Extension of service by motor vehicle in Nebraska intrastate commerce as proposed by applicant in Application No. M-8232, Supplement No. 2, * * *." The effect of their order was to authorize appellant to transport: "Commodities generally, except groceries and liquors, and those requiring special equipment. * * * Irregular Route Operations: Between points and places within a 20-mile radius of Edison, and between points

and places within said radial area, on the one hand, and, on the other hand, points and places in Nebraska, over irregular routes."

Appellant's motion for rehearing was subsequently overruled, and he appealed to this court, assigning that the denial of his application for extension as aforesaid was arbitrary, unreasonable, and contrary to law. We conclude that the assignment should not be sustained.

There are fundamental, well-established, and controlling rules in such cases. In Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756, this court held: "Courts should review or interfere with administrative and legislative action of the railway commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights."

As held in Moritz v. State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545: "The Nebraska State Railway Commission has original jurisdiction and the sole power to grant, amend, deny, revoke, or transfer common carrier certificates of convenience and necessity and such proceedings are administrative and legislative in character.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made."

In Edgar v. Wheeler Transport Service, Inc., 157 Neb. 1, 58 N. W. 2d 496, we held: "The burden is on an applicant for a certificate of convenience and necessity to show that the operation under the certificate is and will be required by the present or future convenience and necessity."

In that connection, we have held in In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507, that: "In determining the issue of public convenience and necessity, controlling questions are whether the operation will

serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified manner without endangering or impairing the operations of existing carriers contrary to public interest."

See, also, In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603, in which we held: "The prime object and real purpose of Nebraska State Railway Commission control is to secure adequate sustained service for the public at minimum cost and to protect and conserve investments already made for that purpose, and in doing so primary consideration must be given to the public rather than to individuals."

In the light of such rules, we have examined the record and summarize the evidence. It discloses that appellant had been in the trucking business since 1944, first from Oxford but now from Beaver City, handling livestock and grain under irregular route authority. The precise extent of his own authority is not disclosed by the record. However, it was concededly more limited in scope than the irregular route authority of Johnson under application No. M-8350, which appellant sought herein to acquire. In any event, appellant now operates four tractors, three trailers, and one straight truck from a place of business in Beaver City consisting of an office and truck-service area facilities, with room in the center for construction of a dock. He has been making from 10 to 12 trips per week to Omaha handling livestock as a result of an increase in volume, because some other livestock truckers in the area have discontinued their service.

Several months before the hearing appellant arranged for dock facilities and pick-up services at Omaha, and commenced regular route operations with return freight to Oxford, Beaver City, Edison, and Arapahoe, out of Omaha and elsewhere, thereby obtaining enough general

freight revenue to earn within 40 to 45 percent of his livestock revenue.

In such situation, a commission inspector in Omaha required appellant to get his operations in line with his authority, so he filed this application requesting extension thereof to regular route because he wanted to hold the business which he had acquired as aforesaid, and increase the tonnage of general freight from points of origin, Omaha, Lincoln, and Hastings, to Oxford, Beaver City, Edison, Arapahoe, and off-route point Bertrand, which has a population of only 584. If his application were granted he intended to add one van-trailer to his equipment, retain his dock facilities at Omaha, establish such facilities at Lincoln and Hastings, continue regular route daily general freight service to and from the points and towns aforesaid, and advertise and solicit business therein. Under his proposed schedule, his trucks would regularly leave Omaha at 5 p. m., pick up freight in Lincoln and Hastings, arrive at Oxford about midnight, and distribute such freight to the towns by noon the next day. His competitors would be Highway Motor Freight, Inc., Ideal Truck Lines, Coffey's Transfer Co., B & B Truck Lines, Red Ball Transfer Co., Burlington Truck Line, Burlington Railroad, and other irregular carriers who also operate in the area.

Beaver City, the center of his operations, has a population of 913. It is presently served from Omaha, Lincoln and Hastings, arrive at Oxford about midnight, and Truck Lines three times a week, Coffey's Transfer Co. daily with teletype service at least until 3 p. m. daily, appellant's irregular route on call and demand, and other irregular carriers. The Ideal Truck Lines also serves it with points of origin from Kansas City and points west.

Eight witnesses from Beaver City testified for appellant, and as a matter of course the commission, as it should, considered both the direct and cross-examination, which in several instances materially weakened appel-

lant's application. One of such witnesses was appellant's wife who simply testified with regard to the office work and transmission of freight service telephone calls by her. Seven of the witnesses were shippers who generally used other facilities as well as appellant's. Five of them testified in substance that present trucking service at Beaver City with few exceptions had been satisfactory and adequate, characterizing Coffey's Transfer Co. service as good, very good, satisfactory, and very satisfactory. One remaining witness was a seed and feed dealer who said his seed inventory was delivered by the supplier. He got most of his feed by rail but the rest by appellant. The other witness and appellant were mutual customers. Such witness operated a filling station and appellant moved most of his freight, but present facilities were adequate for his purposes. None of such witnesses testified that there was any future public need or demand for additional truck-line service in Beaver City. They generally assumed that it would be beneficial as a whole to the community to have a regular-route truck-line headquarters located there giving them personal contact with the shipper for delivery of orders and settling of claims, and that in some instances the proposed service might be quicker and safer. In that connection, the evidence discloses that present carriers lawfully serving Beaver City are fully equipped and prepared to handle any and all kinds of freight there except that requiring special equipment, which is not involved.

Oxford, Edison, and Arapahoe have a combined population of 2,798. They are served by Burlington Railroad, Burlington Truck Line, Highway Motor Freight, Inc., Ideal Truck Lines, Coffey's Transfer Co., B & B Truck Line, Red Ball Transfer Co., appellant, and some other irregular carriers. Three witnesses from Oxford testified for appellant, and the testimony of another witness therefrom was stipulated. Two of such witnesses were mutual customers of appellant. One of them was a filling station operator who had just started in busi-

ness and had not "really any freight hauled." Another was an automobile dealer who received regular stock orders by truck once a month with emergency orders two or three times a week hauled by appellant. It was his opinion that movement of freight worked from a dock terminal, as done by Highway Motor Freight, Inc., at McCook, and Coffey's Transfer Co., at Holdrege and Alma, was not generally as quick or safe as when delivered directly, as proposed by appellant. The third witness, an implement dealer, and the fourth, whose evidence was stipulated to be the same, testified that he received freight from appellant, Burlington Truck Line, Red Ball Transfer Co., and Coffey's Transfer Co., with whose services he had been very well satisfied. His shipments originating at Hastings had been handled by B & B Truck Line. He uses appellant about three times a week. He testified that present freight service is satisfactory, "but as I said before it can always be better," and gave his opinion that if all shipments came by one carrier there might be a tariff freight charge advantage.

Two witnesses from Arapahoe testified for appellant. One was engaged in the feed and produce business. He testified that he received his feed, "quite a lot of it," in straight railroad cars from Lincoln, and the balance by appellant's truck when business was slack, and the service was satisfactory. Some of his feed was handled out of Sioux City, but it was handled and delivered from there by the supplier mill itself. He knew there were "a good many other services coming into Arapahoe" but he did not use them because he was "not sure that all those others haul feed." It was his opinion that if appellant were given regular route authority direct delivery would better protect the sacks of feed and he could reduce the size of his stock by daily delivery.

The other witness was an implement dealer who received most of his freight from Lincoln, Kansas City, and other points, including Omaha. He had used Cof-

fey's Transfer Co., B & B Truck Line with good service, and Highway Motor Freight, Inc., which was slow. He had also very good service with Burlington Truck Line out of Kansas City and had once used appellant to haul some machinery out of Lincoln. He testified that when he calls for an order he leaves it to the supplier to "send it the best way" and he would use appellant's service along with others if he delivered the kind of service proposed.

The owner and operator of Coffey's Transfer Co. testified for appellees that he had been in the common carrier trucking business since March 1929, and now covers the west half of the south half of Nebraska and the west half of the north half of Kansas. He has equipment of all types sufficient and capable of moving any freight at all the points involved, except those requiring special equipment, which is not involved. He has completely fulfilled the requirements of his operating authority at all times over the same area here involved; has never denied any requested service; and has received two American Trucking Association awards for efficiently and timely handling claims of shippers. He maintains complete terminal and dock facilities in Omaha, Lincoln, Hastings, Holdrege, Alma, and McCook, with general offices at Alma. Freight destined for Beaver City is picked up at Omaha, Lincoln, Hastings, and Holdrege one day and delivered the next morning on his regular daily Valley Line from Alma, which serves Orleans, Stamford, Beaver City, Hendley, Wilsonville, Lebanon, and Danbury, which have a combined population of 3,022. During 1952 his daily service on that line was cancelled 31 times for lack of tonnage, and twice because of bad weather conditions. In that connection, also, Ideal Truck Lines, one of his competitors, who formerly rendered daily service, has discontinued the same for lack of tonnage and now operates only about three times a week.

Freight destined for Oxford, Edison, and Arapahoe is

picked up in Omaha, Lincoln, Hastings, and Holdrege, and delivered the next morning from Holdrege on his regular daily main line which also serves all towns from Holdrege to McCook by way of U. S. Highway No. 6. In addition to general freight service, he also furnishes all towns aforesaid with refrigerator service, handling fresh meat, vegetables, and perishables, regardless of tonnage, which is adequate for all trade in that territory.

The 11,000-pound equipment normally used by Coffey's Transfer Co. on the Valley Line requires a tonnage of 8,000 pounds each trip in order to be profitable, but the average load carried in 1952 was only 5,822 pounds, with a loss in revenue therefrom made up by his other profitable operations. He and other carriers have already suffered a loss of general freight business since appellant began his regular run.

There is, as we view it, ample competent evidence to sustain the conclusion that appellant's customers could as well be served by irregular route and that if permission were given him to operate a regular route as requested in such small area, then the adequate frequency of carrier service given by others already in the field and serving all outlying towns involved, would be reduced and imperiled for lack of available tonnage. It would permit appellant without any justification to take the better business away from those already rendering like adequate service in a small area with limited population, which is not required by present or future public convenience and necessity, and would be contrary to the public interest.

We conclude from the record before us that the order of the commission denying appellant's application for extension of authority to regular route was not arbitrary or unreasonable or contrary to law. Therefore, it should be and hereby is affirmed.

AFFIRMED.