In re application of Dilts Trucking, Inc.
Dilts Trucking, Inc., appellant, v. Peake, Inc., et al., appellees.
249 N. W. 2d 732

Filed January 26, 1977. No. 40757.

Arlyn L. Westergren of Stern, Harris, Feldman, Becker & Thompson, for appellant.

James E. Ryan, and Rodney Peake of Peake & Navis, for appellees.

Heard before WHITE, C. J., BOSLAUGH, NEWTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

This is an appeal from an order of the Nebraska Public Service Commission denying an application of a trucking company for authority to transport anhydrous ammonia from a pipeline terminal at Greenwood, Nebraska, to all other points in Nebraska.

On May 14, 1975, Dilts Trucking, Inc., the appellant herein, applied to the Nebraska Public Service Commission for authority to transport anhydrous ammonia, in bulk, from the pipeline terminal of MAPCO, Inc., located near Greenwood, Nebraska, to all points in Nebraska. Proper notice was given to all interested parties on May 19, 1975. On May 27, 1975, Becker & Sons, Inc., Peake, Inc., and Ruan Transportation Corporation filed a formal protest to the application. On June 5,

1975, Bulk Carriers, Inc., Central Transport Co., Wheeler Transport Service, Inc., Wynne Transport Service, Inc., and Herman Bros., Inc., also filed a formal protest to the application. All the protestants hold the authority sought by Dilts in its application.

A hearing was held on the application on July 17, 1975, at which time the application was amended such that it was restricted to traffic transported for the accounts of Olin Corporation ("Olin") and Cominco American, Inc. ("Cominco"). On December 4, 1975, the Commission entered an order denying the application, finding that Dilts had failed to meet its burden of proof regarding public convenience and necessity under section 75-311, R. S. Supp., 1976. On December 18, 1975, Dilts moved for a rehearing and after a hearing on January 5, 1976, the Commission overruled the motion on March 22, 1976. In its order, the Commission reviewed the evidence adduced at the hearing on July 17, 1975, and made a specific finding that Dilts had engaged in the unauthorized and illegal transportation of anhydrous ammonia in bulk from a pipeline terminal at or near Greenwood, Nebraska, to specified places in Nebraska since 1975, and stated with regard thereto as follows: "It is the opinion of this Commission that here the Applicant's illegal operation cannot go unnoticed and, in fact without penalty. A grant of this application would in fact reward the Applicant for its illegal acts. To do so would only encourage a breakdown in this Commission's administration and enforcement of the Motor Carrier Act." In its order the Commission also distinguished the case of Nashua Motor Express, Inc. v. United States, 230 F. Supp. 646 (N. H., 1964), on remand, 96 M.C.C. 583, a case relied upon by Dilts in support of its position that its transportation of anhydrous ammonia in Nebraska had been under "color of authority" because it held a certificate of public convenience and necessity issued by the Interstate Commerce Commission on September 25, 1969, and

had at all times believed that the involved traffic was moving in interstate commerce for which transportation it held the necessary authority, and that its operations had not been conducted in willful defiance of law. The Commission specifically found that Dilts was not operating under any "color of authority" issued by the Commission and concluded that a public need had not been established for applicant's proposed service as required by section 75-311, R. S. Supp., 1976. Commissioner Eric Rasmussen filed a dissenting opinion to the order of the Commission, in which he disagreed with the conclusion of the Commission that Nashua could be distinguished from the Dilts case; and expressed the opinion that Dilts is a "color of right" case and the evidence of past operations should be utilized in determining whether public convenience and necessity require the continuation of such operations. He concluded that it did; and stated that, based on legal precedent and the facts of the Dilts case, a sustaining of applicant's motion to reconsider was warranted. Dilts then perfected its appeal from the orders of the Commission. We reverse and remand for further proceedings.

The testimony adduced at the hearing before the Commission may be summarized as follows. Clifford D. Dilts, the president and sole stockholder of Dilts Trucking, Inc., testified on behalf of the applicant, and filed a prepared statement. Dilts Trucking, Inc. ("Dilts"), currently holds a certificate of public convenience and necessity, issued by the Interstate Commerce Commission on September 25, 1969. This certificate grants Dilts authority to carry anhydrous ammonia, in bulk, from the pipeline terminal of MAPCO, Inc., located near Greenwood, Nebraska, to other points in Nebraska and adjoining states.

Dilts began transporting anhydrous ammonia for Olin and Cominco from the Greenwood terminal to points in Nebraska in 1972, and did so until April 1975.

At that time Dilts was informed by the Commission that its operation involved intrastate commerce, and that it must obtain appropriate authority from the Commission to make such shipments. Dilts immediately ceased its transportation of ammonia from Greenwood to other points in Nebraska, and Dahlsten Trucking took over the traffic which Dilts would have otherwise handled. Dilts leased Dahlsten Trucking six vehicles to assist Dahlsten in its operation, and these leases were approved by the Commission.

Clifford D. Dilts testified that prior to April 1975, he had believed that his ICC certificate granted him the lawful authority to conduct the operations in question. He believed the traffic was interstate commerce because there is no actual storage facility at Greenwood, except a small "bullet" tank for transferring the ammonia to trucks, and the terminal at Greenwood appeared to be used soley for that purpose. The ammonia Dilts shipped originated from outside Nebraska. Dilts does not now contest the Commission's interpretation of the intrastate nature of the shipments in question, but contends that its explanation of its belief that the shipments were interstate commerce shows that it had operated in good faith, and under the reasonable belief that its operation was a legitimate and lawful enterprise. Prior to April 1975, Dilts had never been advised that its transportation of traffic from Greenwood to points in Nebraska was unauthorized.

In 1974, Dilts handled a total of 94 shipments of ammonia for Olin to points in Nebraska. From January to April 1975, Dilts handled a total of 73 shipments for Olin. During the same period, Dilts handled 4 shipments for Cominco. Dilts relies on these figures as evidence of the public need for the proposed service, and these facts also have import in regard to whether this is a "color of right" case.

Mr. Stephen E. Storc and Mr. Floyd Craig, employees of Olin and Cominco respectively, testified in support

of Dilts' application. Both stated that Dilts' service had been outstanding, and that their companies would not be able to obtain the service they required if the application were denied. Craig testified that his experience with the protestants was that they were simply not interested in providing the equipment and service his company required, and Storc stated that he at most got only vague promises of assistance when he approached some of the protestants for service prior to each year's seasonal movement of ammonia. Olin has occasionally tendered business to some of the protestants, but never to a significant degree; while Cominco used two of the protestants to handle shipments of ammonia in 1974 and 1975. Craig and Storc acknowledged that the limited service the protestants have provided to their companies had been satisfactory, and that service at the Greenwood terminal has generally been adequate. Both Olin and Cominco have primarily relied on carriers which are not protestants in this case since Dilts terminated its operations in May 1975.

Evidence was also received from witnesses testifying on the behalf of the protestants, Becker and Sons, Inc., Wheeler Transport Service, Inc., Ruan Transportation Corporation, Herman Bros., Inc., Wynne Transport Service, Inc., and Bulk Carriers, Inc. Summarizing, the evidence of the protestants was that they all have made significant investments in motor carrier equipment; that their equipment is not being utilized to its full capacity; that some of them have solicited Olin and Cominco business with no success; that some of them have satisfactorily provided Olin and Cominco with service prior and subsequent to May 1975; that all are desirous and capable of serving Olin and Cominco in the future; and that all of them currently hold appropriate certificates of public convenience and necessity which authorize the transportation of anhydrous ammonia from Greenwood to other parts in Nebraska.

Although the Commission found that Dilts is fit,

willing, and able to properly perform the service proposed and to conform to the Commission's rules and regulations, as previously stated, it denied the application on the grounds that Dilts failed to meet its burden of proof regarding public convenience and necessity; that Dilts is not a "color of right" case; and that Dilts' illegal operation "cannot go unnoticed and, in fact without penalty."

In its brief on appeal, Dilts raises several assignments of error, but its principal contention is that the Commission erred in failing to find that the present and future public convenience and necessity requires a grant of its application; and argues that this case is a "color of right" case, and that a finding of inadequacy of existing service is not a prerequisite to the grant of authority for which Dilts has applied. It also contends that the Commission erred in denying the application in order to penalize Dilts for its past operations.

Section 75-311, R. S. Supp., 1976, sets forth the requirements for the issuance of a certificate like that applied for in this case: "A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing that the applicant is fit, willing, and able properly to perform the service proposed, and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

The only statutory requirement at issue in this case is whether the proposed service "is or will be required by the present or future public convenience and necessity," inasmuch as the Commission found that Dilts had met the other statutory requirements. In Ruan Trans-

port Corp. v. Herman Bros., Inc., 192 Neb. 343, 220 N. W. 2d 245 (1975), we held that the purpose of the Motor Carrier Act was to regulate common carriers for the public interest, and not to stifle competition, but to foster it. In that case we also held that the burden is on the applicant to show that the authority he seeks is required by the public convenience and necessity, and the determination of that issue is "peculiarly within the discretion and expertise" of the Commission.

As set forth in Ruan, considerations deemed relevant to the issue of public convenience and necessity are: (1) Whether the operations proposed will serve a useful purpose responsive to public demand or need; (2) whether this purpose can or will be served as well by existing carriers; and (3) whether or not the purpose can be served by applicant in a specified manner without endangering or impairing the existing carriers contrary to the public interest. See, also, Wells Fargo **Armored Service Corp. of Nebraska, Inc. v. Banker's** Dispatch Corp., 186 Neb. 261, 182 N. W. 2d 648 (1971). It is also well established that where the evidence is in conflict, the weight of the evidence is for the determination of the Commission and not this court. Neylon v. Petersen & Petersen, Inc., 183 Neb. 813, 164 N. W. 2d 452 (1969). This court will not disturb an order of the Commission unless the Commission's order is illegal, arbitrary, capricious, or unreasonable. See Canada v. Peake, Inc., 184 Neb. 52, 165 N. W. 2d 587 (1969).

Ordinarily, the foregoing principles would dispose of the case at hand and mandate affirmance of the Commission's orders. In this case, however, an additional issue is presented which requires consideration. As will be hereinafter demonstrated, different rules are applied in "color of right" cases than in ordinary applications for certificates of public convenience and necessity. If the Commission erred in its conclusion that Dilts was not a "color of authority" case and neglected or refused to apply the law applicable to such cases, then it would

appear that the Commission erred in the determination of what law was applicable in the instant case, and its order would be illegal and entitle the applicant to a further hearing before the Commission for a reconsideration of the evidence in the light of the correct principles of law.

Dilts has operated as a carrier since at least 1972 under the assumption that its ICC certificate authorized it to do so, and therefore contends that this is a "color of right" case. A number of Nebraska cases, as well as federal cases, have recognized the principle that applicants who have previously operated under "color of right" need not make the same showing under section 75-311, R. S. Supp., 1976, as an applicant who proposes a completely new service.

We discuss first the leading federal case on the subject, which is Nashua Motor Express, Inc. v. United States, *supra*. In Nashua, a carrier applied for a grandfather certificate in 1936 which was not issued until March 1942, which he believed granted him certain authority. The carrier operated openly and without challenge until 1960, when it was advised that its operations exceeded the authority granted in the grandfather certificate. The ICC denied the carrier's application for extended authority to conform with its operations, or for a new certificate granting it the proper authority, despite the fact that the carrier's past operations were conducted under a misapprehension as to the scope of its certificate. The denial of the ICC was based on its finding that no inadequacy was shown in the protestants' services.

The federal District Court overruled the ICC, finding that "the absence of a finding of inadequacy is not alone sufficient to bar the issuance of a certificate when other factors justify a finding of public convenience and necessity. The element of inadequacy is thus not a controlling one, but is to be considered along with the other factors * * *." 230 F. Supp. at 653. On remand,

the ICC granted the carrier's petition stating: "Petitioner has conducted the considered operations for a substantial period of time. Although past operations, standing alone, are not conclusive proof of a public need for their continuance, they are, where not conducted in willful disregard of the law, entitled to consideration in determining whether, on balance, the public convenience and necessity require authorization of such operations. Petitioner has provided a highly satisfactory service which has attracted a substantial volume of traffic from a number of shippers. Those supporting the application have used petitioner's service in the past, have come to rely on the superiority of its service, and strongly express their need for its continuance. Protestants cannot be said to rely upon such traffic, and we do not believe they will be injured seriously by a grant of authority enabling petitioner to continue such service.

"Upon these facts, we do not believe that we can disregard the need expressed by shippers for the superior transportation service provided by petitioner. On balance, therefore, we believe that the demonstrated needs of shippers for petitioner's superior service outweigh any adverse effect which a grant of authority might have on protesting carriers. We are satisfied that a need has been established for the proposed service to the extent indicated in our findings." 96 M.C.C. 583, at 586 (1964).

The holding of the Nashua case to the effect that a showing of inadequacy of existing service is not a prerequisite to the issuance of a certificate or a grant of additional authority has been adhered to in subsequent cases. See, Lemmon Transport Co., Inc. v. United States, 393 F. Supp. 838 (W. D. Va., 1975); Union Mechling v. United States, 390 F. Supp 391 (W. D. Pa., 1974). The Nebraska Commission attempts to distinguish Nashua on the basis that the carrier in Nashua was operating under a grandfather certificate, where-

as Dilts had no certificate at all for the particular operation in question from the Nebraska Public Service Commission. We do not believe the distinction is valid, as will be subsequently demonstrated in this opinion.

We now review Nebraska cases which we believe are pertinent and persuasive. In Preisendorf Transport, Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865 (1960), a carrier applied for a certificate to transport petroleum products after it was discovered that an earlier certificate granted to it was void. The carrier had operated for 10 years with the understanding that its certificate was proper, and an erroneous judgment of the Commission was the cause of the carrier's understanding that it had proper authority to operate. The Commission granted the carrier's application for a proper certificate, and this court affirmed the Commission's order. This court held that it was proper to admit evidence of past operations of an applicant when it is shown that those operations were conducted under color of right. The court stated: "In cases where new or extended original authority was sought, we have held that: 'In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest.' In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603. See, also, In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507; Christensen v. Highway Motor Freight, 158 Neb. 601, 64 N. W. 2d 99; Houk v. Peake, supra; Miller v. Consolidated Motor Freight, Inc., supra. Appellants offered evidence in support of each of these issues. *However in cases such as now before the court, where the applicant seeks to obtain a lawful certificate to continue in a business which it has*

*been operating under color of authority, we do not think it controls.* Here it is apparent that this same business has been operated long enough that the original authority therefor from the commission was under a 'Grandfather' certificate. True the subsequent transfers of the authority were void but the various owners thereof continued to operate the business thereunder in good faith and, it is apparent, are still doing so. Six customers of the appellee testified that they had been using appellee's services for various periods of time, that such services were very satisfactory, and that they would like to see appellee continue in business so they could use its services in the future. Under this situation we think the following quotations have application:

" *'Successful operation in the past creates a presumption that public convenience and necessity require a continuance of such operation.'* Dougherty Storage & Van Co. Common Carrier Application, 3 M.C.C. 427." (Emphasis supplied.) The principles enunciated in Preisendorf in regard to the color of right principle have been recognized and adhered to in subsequent cases. See, Canada v. Peake, Inc., *supra;* Neylon v. Petersen & Petersen, Inc., *supra;* Andrews Van Lines, Inc. v. Nielsen & Petersen, Inc., 180 Neb. 764, 145 N. W. 2d 584 (1966).

This court has very recently decided a case which is pertinent to the question before us. In Groenewold v. Building Movers, Inc., *ante* p. 187, 247 N. W. 2d 629, the Commission granted a certificate of authority to an applicant for the moving of houses. The applicant had conducted prior operations without a certificate of any kind. We affirmed the decision of the Commission and held it proper to consider evidence of past illegal operations of the applicant where there is no willful and intentional violation. The analogy to Dilts is apparent, and clearly negates the attempt of the Commission to differentiate Nashua on the basis that Nashua was operating under a "grandfather" certificate, and hence

under "color of right.". In Groenewold the applicant had not operated under any type of certificate whatever. The same was true in Wells Fargo Armored Service Corp. of Nebraska, Inc. v. Bankers Dispatch Corp., 188 Neb. 584, 198 N. W. 2d 195 (1972). In this case, Dilts had authority from the ICC to operate, and could reasonably have believed that he was performing services in interstate commerce. Dilts did misinterpret his certificate from the ICC, but did so openly, without defiance, and apparently without knowledge that he was acting without the proper authority. We think it is clear that the Commission should have treated this case as a "color of authority" case, and that it erred in interpreting Nashua as it did. The fact that Dilts misinterpreted an ICC certificate, rather than a Nebraska certificate, should not prevent the Commission from properly considering Dilts' past operations. See W. C. McQuaide, Inc., Extension—Air Freight, 108 M.C.C. 24 (1968), where a carrier misinterpreted a stated certificate such that the carrier thought he was conducting *intrastate* operations rather than *interstate* operations. That case was treated as a "color of right" case when the carrier applied for an ICC certificate after discovery of error. Here, the Commission not only refused to treat the case as a "color of right" case, but also stated that Dilts' illegal operation "cannot go unnoticed and, in fact without penalty." It seems clear that the Commission not only refused to consider Dilts' application in light of its previous color of authority, but punished it for its prior actions.

We are of the opinion that under the facts of this case the action of the Commission was illegal, arbitrary, and unreasonable in light of the fact that it did not consider the application in accordance with applicable principles of law, which are that an applicant who has been operating under color of authority need not make the same showing that an applicant who has never operated must make, and that there is a presumption that

the proposed service is or will be required by the present or future public convenience and necessity.

We, therefore, reverse and remand this cause for a reconsideration by the Commission under the evidence as a "color of right" case.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

KUNS, Retired District Judge, dissents.