In re Application of King's Limousine Service, Inc. Gentry Real Estate Co., doing business as The Gentry Limousine Co., and Happy Cab Co., Division of Hunt Transportation, Inc., appellants, v. King's Limousine Service, Inc., appellee.

272 N. W. 2d 359

Filed December 6, 1978. No. 41668.

Peterson, Bowman, Larsen & Swanson, for appellants.

Richard T. Kizer of Hotz, Kluver & Kizer, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

This is an appeal from an order entered on June 14, 1977, by the Nebraska Public Service Commission, granting an application filed on October 22, 1976, by King's Limousine Service, Inc., of Omaha, Nebraska, (hereafter referred to as King's), which sought authority to operate in intrastate commerce in Nebraska a luxury limousine and van-type service transporting passengers and their baggage between points in Omaha, Nebraska; and between points in Omaha, Nebraska, on the one hand, and, on the other hand, points throughout the State of Nebraska. Following a hearing, the Public Service Commission on May 12, 1977, denied King's application; but on June 14, 1977, sustained King's motion to rehear and/or reconsider its order dated May 12, 1977; and in its order of June 14, 1977, granted authority to King's to engage in the "Transportation of passen-

gers and their baggage in limousine-type vehicles of nine (9) passenger capacity or less. * * * Between points in Omaha, Nebraska, and between points in Omaha, Nebraska, on the one hand, and, on the other hand, points throughout the State of Nebraska." The order further provided that a certificate of public convenience and necessity should be issued to King's upon compliance with certain terms and conditions set forth in the order, and that King's should not conduct operations until a certificate of public convenience and necessity was issued. Notice of appeal to this court was thereafter filed by Happy Cab Co., Division of Hunt Transportation, Inc., one of the original protestants, and Gentry Real Estate Co., doing business as The Gentry Limousine Co., which had filed a petition for leave to intervene in opposition to King's application, and thereafter took part in the hearing before the Commission. In addition, protests to the granting of the application were also filed by Greyhound Lines, Inc., and Yellow Cab, Inc. It appears that Greyhound Lines, Inc., subsequently withdrew from the case; and Yellow Cab, Inc. on September 14, 1977, gave notice to the Commission of its desire to become a party to the appeal, but did not file a brief in this court.

In their brief, protestants-appellants assign as error the following findings by the Public Service Commission: (1) That the public convenience and necessity require the operations of the applicant under the authority sought in this application; (2) that the applicant showed any need whatsoever for operations beyond the city of Omaha; and (3) that the applicant was fit to conduct operations under the authority sought in this application. They also claim the Commission erred in failing to find that existing carriers would be injured by a grant of the application. We affirm the action of the Public Service Commission.

It appears from the record Edward Lanning King

and his wife are co-owners of King's Limousine Service, Inc., which was incorporated in October or November of 1976. King originally commenced his operations in the city of Omaha in 1970, at which time he was engaged in supplying limousine and driver's services for funerals and funeral homes in the city, which is an excepted operation under section 75-303(7), R. R. S. 1943. Over the years the demand for luxury or VIP-type limousine service has expanded. He has frequently supplied that type of service for weddings and for various businesses and organizations in the city, including the City Auditorium, Central States Health & Life Company of Omaha, the First National Bank, The Omaha National Bank, the Orpheum Theater, Weyerhaeuser Company, Omaha Steaks International, Mutual of Omaha, Aksarben, KETV, KMTV, WOW-TV, Methodist Hospital, Brandeis, Boys Town tours, and others. King's supplied drivers with their limousines, and the normal method of operation is that the drivers pick up the clients in the limousines and deliver them to the requested locations. The drivers then wait for the client until the client wishes to move on to a new destination. King testified the bulk of his business originates in the Omaha area, but in the past he has been hired to transport people in his limousines to other towns, such as Lincoln or North Platte. King freely admitted he had been operating his luxury limousine services without a certificate of public convenience and necessity as long as 2 to 3 years prior to 1976, at which time he was advised he should obtain such a certificate if he desired to continue with the limousine service. He also testified he was contacted by a member of the Public Service Commission, who told him to "honor his obligations", which had already been booked by the applicant. It further appears he had also been advertising in the yellow pages of the telephone book for VIP services; but an agent of the Commission

requested that he change this advertising, which he did. King incorporated his business in October or November of 1976, and immediately filed an application to operate a luxury limousine service with the Public Service Commission. In explaining his failure to obtain a certificate of public convenience and necessity for his operations prior to his application in 1976, King testified: " * * * I didn't get it because this, this stuff worked up on me so gradual that I didn't realize how much I was doing. The amount of money and stuff that it would cost to get it, it just didn't seem worthwhile at the time. And there was so little of it, and nobody seemed to be making any, many fusses about it."

In addition to King, other witnesses appeared at the hearing before the Public Service Commission for the purpose of establishing the need for the special type of limousine services supplied by King's. One of the largest users of those services was the Omaha Civic Auditorium. Charley Mancuso, Auditorium, Stadium, and Theater manager for the city of Omaha, was an important witness in support of the applicant, King. His duties included the making of arrangements for attractions to appear in the City Auditorium, stadium, and Orpheum theater. In answer to a question as to whether the contracts for such attractions contain riders making limousine service mandatory, he replied: "A. No question about that. The limousine service definitely is mandatory, the type of limousine service is, and it's one of the most important ones. We have, in the last five or six years, haven't had any problem whatsoever. Prior to that time we did get a few complaints, but because we only had [a] few concerts, our complaints weren't great. Q. How many outfits are you aware of in the City of Omaha who, who serve your needs as far as the limousine service is concerned? A. Only one. King's Limousine."

Also appearing as a witness in support of King's

application was Jack Wolff, Supervisor of Claims for Central States Health & Life Company of Omaha, who testified his company had used the services of King's Limousine Service in the past for a charity fund-raising event, and could use luxury limousine service for sales meetings with regional managers and their employees.

Thomas Jenkins, at that time president of the Student Bar Association of Creighton University School of Law also appeared and testified in support of the application to the effect speakers of interest to the legal community are brought into the Omaha area, and he felt a limousine would be the most appropriate form of transportation for them and would be preferable to having a cab meet the individual at the airport. Also introduced into evidence was an affidavit by F. Phillips Giltner, corporate president of the First National Bank of Omaha, stating the limousine service provided by applicant was, in his opinion, unique to the area.

Paul M. Grieger, owner of the Gentry Limousine Co., and Harold Hunter, vice president of Happy Cab Co., testified in opposition to the application. Grieger testified his company had been granted authority to operate a limousine service between points and places within an 80-mile radius of Lincoln, Nebraska, over irregular routes and from said radial area on the one hand, and on the other hand, points and places throughout the State of Nebraska. The authority was restricted against traffic originating at Omaha, Nebraska, unless it was destined to Lincoln, Nebraska. This would clearly restrict the Gentry Limousine Co. from operating a limousine service within the city of Omaha as long as the traffic originated in said city and was not destined for Lincoln; hence appellee contends Gentry is not a competitor of King's within the city of Omaha and could not provide limousine service solely within said city. Hunter, testifying on behalf of Happy Cab Co., stated his

company had been granted a certificate of public convenience and necessity to operate taxicabs within the city of Omaha and vicinity and at the time was operating 30 pieces of equipment with an additional 6 on order. He also testified his firm had made arrangements with various Omaha companies to rent luxury cars, and drivers employed by his firm would operate those cars when people requested such service. In its order of June 14, 1977, the Public Service Commission found that although Happy Cab may have contractual arrangements with automobile leasing firms for luxury automobiles, such operations cannot be run under Happy Cab's certificate of public convenience and necessity unless they assume full control of the operation and charge the rate schedule of $6 per hour with a 2-hour minimum charge, called for in their rate structure, instead of the increased charge of a minimum of $50 per night proposed by Happy Cab. The Commission found the existing carriers could not adequately perform the proposed services. When asked why he was opposing the application, Hunter replied the city was saturated with taxicabs and the cab industry did not need any more competition.

A review of certain pertinent and applicable principles of law will be helpful at this point. Section 75-311, R. R. S. 1943, provides, in part, as follows: "A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing that the applicant is fit, willing, and able properly to perform the service proposed, and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, is or will be required by the present or future public convenience and necessity;

otherwise such application shall be denied." We have also held that under section 75-311, R. S. Supp., 1976, an applicant for a certificate of public convenience and necessity has the burden of showing that the authority he seeks is required by the public convenience and necessity, and the determination of that issue is peculiarly within the discretion and expertise of the Public Service Commission. Dilts Trucking, Inc. v. Peake, Inc., 197 Neb. 459, 249 N. W. 2d 732 (1977). In Dilts we also held that where the evidence is in conflict, the weight of the evidence is for the determination of the Public Service Commission, and this court will not disturb an order of the Commission unless its order is illegal, arbitrary, capricious, or unreasonable.

We believe there is ample evidence in the record to sustain the finding of the Commission that there is a need for the type of luxury limousine service which has in the past been supplied within the city of Omaha and environs, and to a limited extent, elsewhere in the state; and that applicant is fit, willing, and able to provide that service. We do not believe the evidence sustains the generalized fear of the protestants that the granting of the certificate will injure existing carriers providing the same or similar service. Appellants' principal contention appears to be that because of King's past violations in providing such services without having first obtained a certificate of public convenience and necessity, applicant should be denied the right to provide such needed services henceforth, and should be punished for his past violations. We agree with appellants' contentions that this case is not a "color of right" or "color of authority" case because it is clear King was not operating under any misunderstanding as to the extent of his right or authority to provide the services in question, and he freely admitted he operated without authority to do so. His explanation for operating without proper authority has previously

been set forth in this opinion. We agree it is proper that those violations be considered in connection with the determination of his "fitness" under the statute. However, we have held where the fitness of the applicant is an issue and evidence both affirmative and negative in nature is presented, this court will not substitute its judgment for that of the Commission if the order of the Commission is supported by competent evidence. In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603 (1950). Illegality of past operations does not necessarily bar a carrier from seeking and obtaining an additional certificate for operating authority. North American Van Lines, Inc. v. I. C. C., 386 F. Supp. 665 (1974). The fitness of the applicant was clearly an issue in this case. The Commission had all of the foregoing evidence before it, and apparently reached the conclusion applicant was not unfit to provide the service in question. Under the authority previously cited, we conclude the Commission acted within the scope of its authority; the order of the Commission was not illegal, arbitrary, capricious, or unreasonable; and we affirm the decision of the Public Service Commission.

AFFIRMED.