IN RE APPLICATION OF HUNT TRANSPORTATION, INC. NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V. HUNT TRANSPORTATION, INC., APPELLANT.

333 N.W.2d 883

Filed May 6, 1983.   No. 82-004.

Marshall D. Becker of Stern & Becker, for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk, for appellee.

BOSLAUGH, MCCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and GARDEN, D.J.

BRODKEY, J., Retired.

Respondent below, Hunt Transportation, Inc., appeals to this court from the findings and order of the Nebraska Public Service Commission, appellee herein, and hereinafter referred to as "Commission," which order was entered on November 10, 1981, following a hearing on an order to show cause filed July 21, 1981, directing Hunt Transportation, Inc., Omaha, Nebraska, to show cause, if any there be, why its certificate of public convenience and necessity should not be revoked. In its order of November 10, 1981, the Commission found that the respondent had violated certain of the Commission's rules and regulations (1) by failing to confine its operations to those authorized under its certificate, and (2) by failing to charge and collect rates and issue and deliver freight bills as prescribed by the Commission. The Commission also found that the violations were not willful, but ordered the respondent to instruct its drivers of the authority held by the respondent and to explain the exemptions under which they apparently often haul, and to cease and desist from operations such as those carried out in this manner. The Commission also found that an order to cease and desist from such operations should be issued to the respondent to prevent operations of the nature described. In its order the Commission stated: "IT IS, THEREFORE, ORDERED by the

Nebraska Public Service Commission that the Order to Show Cause in the matter of the Hunt Transportation, Inc., Omaha, Nebraska, be sustained''; and ''IT IS FURTHER ORDERED that Hunt Transportation, Inc. cease and desist from conducting operations outside its authority and from failing to charge and collect rates prescribed by the Commission.'' We reverse.

Involved in this appeal is the interpretation of Neb. Rev. Stat. § 75-303, and specifically § 75-303(6) (Reissue 1981), which reads as follows: ''The provisions of sections 75-301 to 75-322.01 shall apply to the transportation of passengers or property by motor carriers for hire engaged in intrastate commerce except: . . . (6) To supplies or merchandise being transported by motor vehicle from or to any ranch, dairy, feedlot, or farm for use thereon when originating at or destined to a neighboring trading point or points.'' So far as we have been able to ascertain, the above-quoted section has never heretofore been interpreted by the Commission or this court.

The facts in this case are not in any real dispute by the parties; and, as we view it, the question in this appeal is one of law, and also whether or not the Commission exceeded its authority. Respondent Hunt was charged with transporting one load of plastic pipe and irrigation equipment from Grand Island, Nebraska, to Beemer, Nebraska, without the proper authority and for failing to charge and collect the proper rate. Hunt does not deny that it did carry a load of plastic irrigation pipe from Gifford-Hill & Company, Inc., in Grand Island to the Stan Ortmeier Co. in Beemer, Nebraska. Nor does Hunt deny that such a shipment is not authorized by its certificate. The crux of Hunt's position is its claim that it did not need certificate authority for the shipment because such shipment was exempt from Commission regulation under § 75-303(6), quoted above, which provides that a shipment is exempt if it is of

"supplies or merchandise being transported by motor vehicle from or to any ranch, dairy, feedlot, or farm for use thereon when originating at or destined to a neighboring trading point or points."

Hunt claims that notwithstanding the actual delivery was made to a business in Beemer, Hunt intended to deliver it directly to a farm site, but that its intention was frustrated by an act of God, namely, a rainstorm, which made the fields too soft for truck tires. Therefore, Hunt claims that, of necessity, it had unloaded the irrigation pipe at the pipe installer's place of business, the Stan Ortmeier Co. in Beemer. It should be noted, however, that the installer was the one that placed the shipment order, was the consignee named on the bill of lading, and was the one that apparently paid the freight bill.

There is support in the record for Hunt's claim with regard to the intended delivery. Both Hunt's primary witness and the acting director of the motor transportation department, one of the Commission's witnesses, testified as to the existence of a shipping manifest indicating that delivery was scheduled to go to the farm. There was also testimony by Hunt regarding its normal procedure in delivering irrigation pipe to a farm. Basically, this procedure entailed the truckdriver meeting the pipe installer's crew at a prearranged and easily discoverable meeting place and then following them to the particular farm.

The Commission apparently accepted Hunt's claim of intended delivery to the farm, and the opinion of the Commission contains several elements that suggest that the Commission actually accepted the claim of such intended delivery. First, in its opinion the Commission states: "However, it is the terms of the bill of lading that determines the nature of a shipment, not the physical unloading of the shipment." Such a holding would be irrelevant if the intended delivery argument was not accepted. It is also significant that the Commission found the viola-

tion was not willful and that the order entered was a cease-and-desist order, not a revocation of Hunt's certificate.

Before deciding whether the fact situation posed constitutes an exemption, we will first examine the scope of review of this court in this case. The rule is well established that on an appeal to the Supreme Court from an order of the Nebraska Public Service Commission, administrative or legislative in character, the only questions to be determined are whether the Commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. See, for example, *Neb. Public Service Commission v. Grand Island Mov. and Stor. Co., Inc.*, 203 Neb. 356, 278 N.W.2d 762 (1979); *Herman Bros., Inc. v. Spector Industries, Inc.*, 209 Neb. 513, 308 N.W.2d 720 (1981); *Dilts Trucking, Inc. v. Peake, Inc.*, 197 Neb. 459, 249 N.W.2d 732 (1977); *Nebraska Railroads of Omaha v. Nebco, Inc.*, 194 Neb. 322, 231 N.W.2d 505 (1975). However, different rules are applied in the event that there has been the application of wrong rules of law to the facts of the case or evidence showing that the Commission has exceeded its authority. In *Dilts, supra*, which was a "color of authority" case, we stated: "If the Commission erred in its conclusion that Dilts was not a 'color of authority' case and *neglected or refused to apply the law applicable to such cases*, then it would appear that the Commission erred in the determination of what law was applicable in the instant case, and *its order would be illegal* and entitle the applicant to a further hearing before the Commission for a reconsideration of the evidence in the light of the correct principles of law.

. . . .

"We are of the opinion that under the facts of this case the action of the Commission was illegal, arbitrary, and unreasonable in light of the fact that it did not consider the application in accordance with applicable principles of law, which are that an appli-

cant who has been operating under color of authority need not make the same showing that an applicant who has never operated must make, and that there is a presumption that the proposed service is or will be required by the present or future public convenience and necessity." (Emphasis supplied.) *Id.* at 466-67, 471-72, 249 N.W.2d at 737, 739.

Unfortunately, we have been unable to find any legislative history to aid us in the interpretation of the exemption provided for in § 75-303(6). The more recent cases do not provide much more assistance. The recent case of *In re Application of Gordon Trucking, Inc.*, 210 Neb. 830, 317 N.W.2d 85 (1982), mentions a similar exemption, but provides little guidance. The entire relevant portion of that opinion reads: "At the conclusion of the hearing the commission noted that the motor transportation to farms and ranches is exempt from regulation under § 75-303(5) . . . ." *Id.* at 832, 317 N.W.2d at 86. A more extended treatment of § 75-303(5) is given in *Livestock Carriers Div. of M. C. Assn. v. Midwest Packers Traf. Assn.*, 191 Neb. 1, 213 N.W.2d 443 (1973). In that case we held that the Public Service Commission properly dismissed an application by the Livestock Carriers Division of the Motor Carriers Association to regulate the transportation of livestock in intrastate commerce. While that case dealt with a different section of the statutes, it is definitely helpful, in that it establishes that an exemption under § 75-303 will deny the Public Service Commission its very jurisdiction over a qualified exempt carrier. Therefore, if we determine that Hunt was entitled to the benefit of the exemption referred to, the Public Service Commission would have no jurisdiction in this case and its order would have to be reversed.

In view of the lack and vague generality of the usual interpretive aids, we are forced to construe the statute in question according to its bare terms. Four elements of the exemption can be identified

and will be dealt with in order. First, the goods being transported must be "supplies or merchandise." There can be no real dispute but that the plastic irrigation pipe in question constitutes supplies or merchandise.

Second, the goods must be *going* "from or to" a ranch, dairy, feedlot, or farm. The problem in this case is that the goods did not actually go to a farm, but they were *intended* to go there and would have but for the rainstorm. The Commission's solution to this problem would require the bill of lading to identify a farm site as the consignee. This suggestion is not without problems of its own. First, there is a conceptual difficulty in forcing an exempt shipment to comply with a regulation in order to be exempt. As *Livestock Carriers, supra*, indicated, the Commission has no jurisdiction at all over exempt shipments. There might also be practical problems with a rule making the exemption dependent on the terms of the bill of lading. For example, if the terms of the bill of lading control, would a shipment consigned to a farm but actually delivered to a dealer be exempt? In fact, a requirement dependent on the terms of the bill of lading might be inconsistent with the statutory terms. For example, if a bill of lading consigned the goods to a business entity but delivery was actually made to the farm, there would be literal compliance with the statute but the interpretive rule would not allow the exemption. More importantly, we point out that the statute in question nowhere by its terms requires the name of the consignee to be shown on the bill of lading. We think the better rule would allow the shipment in question to be considered as going to a farm. This rule would be more in accord with the evident legislative desire and intent to benefit the farmer. Although we believe it would be improper to require the bill of lading to show a farm as consignee, we suggest that freight companies might be well advised to note something to that effect on their bills of

lading as an exercise of prudence and foresight. They should not assume that they will be able to establish an "intended delivery" in the same manner as was done in the instant case.

The third requirement of the exemption is that the goods be "for use thereon" (i.e., on the farm). Appellee strenuously urges that the use in this case was not a farm use. Appellee characterizes this transportation of irrigation pipe to the farm as not for the use of the farmer but for the use of the pipe installer. This argument lacks credulity, and it is not apparent why, if there were two uses, they must be considered mutually exclusive. Appellee argues that allowing Hunt an exemption in this case will effectively deregulate the shipment of all farm supplies in the state by carriers simply timing the delivery of the goods to the farm supplier with the supplier's delivery to the farmer. This threat is purely hypothetical, and the facts indicate that although Hunt has made numerous deliveries directly to the farm and has availed itself of this exemption, this is the only case involved where the delivery has been made to the installer because delivery to the farm was not possible. If any change in the statute as it is presently written is desirable, we suggest that it should be done by the Legislature.

The fourth and final requirement of the exemption is that the goods be going to or from a "neighboring trading point or points." While it may be conceded that the Legislature inserted this language as a type of limitation on the exemption, we are of the opinion that the limitation does not apply in this case. Although there were other pipe vendors closer to Beemer than Grand Island, we are not convinced that that fact alone is dispositive. The statute does not say the nearest neighboring trading point. While there is a dearth of cases interpreting and defining the meaning of the term "trading point" or "trade area," we note that in the case of *Val Vu v. Lacey*, 31 Colo. App. 55, 497 P.2d 723 (1972), that court held

that the phrase "trade area," as defined in the Colorado Unfair Practices Act, did not restrict price competition for alcoholic beverages to the immediate area of the business and that a retail liquor dealer in Boulder County was entitled to meet prices offered by Denver merchants. Without attempting to define "neighboring trading point" for all cases, we hold that on the facts of this case a neighboring trading point was involved.

In conclusion it appears that the shipment in question was exempt under the statute referred to and did not require certificate of authority; therefore, the transportation charges were not subject to Commission control but were subject to negotiation between the parties. The failure of the Commission to find an exemption under the facts of this case constituted a misapplication of the proper law to this case. Also, as stated in *Shanks v. Watson Bros. Van Lines*, 173 Neb. 829, 832, 115 N.W.2d 441, 444 (1962): "Courts are without authority to interfere with findings and orders of the railway commission [now Public Service Commission] *except where it exceeds its jurisdiction or acts arbitrarily.*" (Emphasis supplied.)

According to the rationale of *Dilts* and *Shanks*, therefore, the Commission's decision was illegal and arbitrary and beyond the jurisdiction of the Commission. The order of the Commission must therefore be and hereby is reversed.

REVERSED.